THE CITY OF ST. LOUIS v. THE ST. LOUIS GASLIGHT COMPANY, *Appellant.*

**Injunction**: BOND: DAMAGES. An assessment of damages for defendant upon the dissolution of an injunction, cannot be made except as incident to a bond or stipulation given by plaintiff to pay the damages consequent upon such dissolution.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Glover & Shepley* and *Noble & Orrick* for appellant.

1. The assessment of damages must, in all cases where the injunction is dissolved on final hearing, follow the decree; and this, whether the injunction was originally granted on motion before hearing, or on interlocutory decree after

hearing the testimony. (*a*) This appears from the fact that a jury trial is allowed. R. S. 1879, § 2712. (*b*) All injunctions are in effect temporary, where there is appeal allowed, until affirmed by the court of last resort, as this case emphatically proves. 2. The fact that no bond was given to obtain the injunction, does not prevent an assessment of damages. R. S. 1879, § 2712. (*a*) This section makes no distinction between injunctions granted on bond given, and those where no bond is exacted. (*b*) No statute is needed to give a court of general jurisdiction authority to assess damages on dissolution of injunction. High on Injunc., § 962. This proceeding is independent of any proceeding on a bond. *Sturgis v. Knapp*, 33 Vt. 486.

*Leveret Bell* for respondent.

The remedy by motion to assess damages on the dissolution of an injunction is purely statutory, and forms no part of the general statutory practice. *Garcie v. Sheldon*, 3 Barb. 232; *Merryfield v. Jones*, 2 Curtis 306; *Bean v. Heath*, 12 How. 168. R. S., §§ 2710, 2711, 2712, and 2713, furnish all the statutory law governing the matter, and they provide for a motion to assess damages where a preliminary or temporary injunction is granted and bond given, and make no provision for the assessment of damages on motion in any other case. In the case under consideration, the injunction was granted at the final hearing on a trial of the case on the merits in the circuit court, and no bond was required by the statute and none was given. The motion made in the circuit court to assess damages upon the dissolution of the injunction, which dissolution took place pursuant to the mandate of the Supreme court, issued after the hearing and final determination of the case on appeal in the Supreme court, could not properly be entertained by the circuit court and was rightly discontinued by the court. *Sturgis v. Knapp*, 33 Vt. 486; *Railroad Co. v. Appelgate*, 8 Dana 310. The original case was institute

in the circuit court of St. Louis county on May 21st, 1870, and no injunction was asked or granted. The trial of the case in the circuit court on the merits commenced March 27th, 1876, and terminated April 1st, 1876. On June 1st, 1876, a decree was entered disposing of the entire controversy, except the accounting between the gas company and the city, which was referred to commissioners, and by this decree the St. Louis Gaslight Co., was enjoined from continuing the business of making and selling gas in St. Louis. *St. Louis v. St. Louis Gaslight Co.*, 70 Mo. 69. No bond was given. None was required by the statute. It was the case of an injunction awarded on final hearing, and was, therefore, within the exception contained in section 2710. The plaintiff in the case was not required to execute a bond, and, in point of fact, no bond was executed, and sections 2712 and 2713 have no application here. There is no bond in the case. The motion to assess damages is not based on a bond. The motion, therefore, is simply a motion calling on the plaintiff to respond to the defendant to the extent of plaintiff's liability in the premises. The plaintiff has entered into no obligation defining or specifying its liability. The purpose of a bond is to fix and measure the liability in question. But the damage in this case arises from an injunction granted on final hearing, and it is *damnum absque injuria*, because it is the result of the action of the court itself on a full consideration of the merits of the case. *Russell v. Farley*, 105 U. S. 438.

MARTIN, C.—This was a proceeding by motion to assess damages on account of an injunction granted by the St. Louis circuit court upon final hearing and afterwards dissolved by reversal in the Supreme court.

The city of St. Louis instituted a suit in the circuit court, the object of which was to compel the St. Louis Gaslight Company to convey all its works to the plaintiff, to obtain an accounting of the rents and profits of the works and property subsequent to January 1st, 1870, with

decree of payment of the net balance thereof over ex-
penses, and an order enjoining the company from any fur-
ther prosecution of its business and for the appointment
of a receiver to take charge of the works and carry on the
business until the further order of the court. No tempo-
rary injunction was asked or granted, and for that reason
no injunction bond or stipulation by the plaintiff to pay
damages consequent upon a dissolution of the injunction
appear in the case.

After a final hearing of the case upon its merits, the
remedy as prayed for by plaintiff was granted, and the
property was taken from the control of the company, and
all further prosecution of its business enjoined. Upon ap-
peal to the St. Louis court of appeals, this decree was af-
firmed, from which action of said court the company appealed
to the Supreme Court. In this court the judgments of the
lower courts were reversed and the cause was remanded,
with directions to the circuit court to enter a rule requiring
the receiver to restore to the company all the gas-works
and property held by him in virtue of the decree, together
with the profits derived therefrom, and to report his action
thereon to the court; and upon approval of said report
to dismi s the bill. *City of St. Louis v. St. Louis Gaslight
Co.*, 70 Mo. 69. After the mandate of this reversal was re-
ceived by the circuit court, the defendant filed a motion
with the view of having it carried out. In this motion the
court was asked to ascertain and assess damages suffered
by defendant by reason of the injunction before dismissing
the bill. The damages claimed were stated in the bill of
particulars as resulting from the reduction in the price of
gas during the litigation, from reduction in the cost of
lighting, extinguishing and cleaning public lamps, from
expenditures incurred by the receiver and from attorney's
fees, aggregating in all the sum of $549,475.23. Soon after
the filing of this motion the court entered a final decree
dissolving the injunction and dismissing the cause without

taking any notice of that part of the motion which asked
for an assessment of damages.

The application to assess damages being again brought
to the attention of the court, the plaintiff moved to discon-
tinue all further proceedings thereon, on the ground that
the final decree dismissing the cause terminated the juris-
diction of the court in the premises, and on the further
ground that the court had no rightful authority to assess
damages against the plaintiff, in the absence of an injunction
bond and interlocutory order of injunction that no damages
could be assessed upon the dissolution of an injunction ad-
judged only at a final hearing.   The motion to discontinue
was sustained by Judge Adams of the circuit bench, who
gave his reasons in an able and elaborate opinion, which
has been furnished in the briefs of counsel.   From this ac-
tion of the circuit court the defendant appealed to the court
of appeals in which the judgment was affirmed *pro forma;*
thence it comes before us on appeal.   The matter in issue
involves a question of equity practice and jurisdiction as
affected by our statutes relating to such questions.   For a
proper understanding of the issues it will be necessary to
allude to the jurisdiction and practice of courts of equity
in respect to damages consequent upon the dissolution of
injunctions, as it existed prior to and independent of stat-
utes.

When temporary injunctions were granted, as they
frequently were upon the naked petition and *ex parte* show-
ing of the applicant, and were afterwards dissolved on a
final hearing of the cause, neither law nor equity furnished
any remedy to the defendant for the damages consequent
from them, however serious they might be.   Such damages
were regarded as flowing from the judgment and order of
the court, and not from the plaintiff, if he did nothing
more than to sue in good faith for the process awarded
him.   The injustice which so often resulted from hasty and
unfounded orders of injunction, for the consequences of
which the courts alone were responsible under the law, in-

23 - 82

duced them to adopt as far as was in their power such measures and safeguards as might afford the defendant an indemnity against loss and injury from injunctions which ought never to have been granted. Hence arose the doctrine which recognized in courts of equity the inherent power of exacting conditions, deposits and bonds from the plaintifl before awarding him an injunction, which should in one way or another indemnify the defendant for damages suffered by him in consequence of the process discontinued or dissolved by the court at final hearing. These safeguards were originally exacted in *ex parte* hearings, but came to be required in all interlocutory injunctions, whether granted upon notice to defendant or without a hearing from him. These conditions, deposits and bonds were all in the nature of voluntary obligations on the part of the plaintiff to pay damages to the defendant in the event of a dissolution at final hearing. The method of enforcing them depended upon their nature; some were enforced by the courts of equity, while others were more appropriately enforced by an independent action at law. *Bein v. Heath*, 12 How. 168. Thus it will be seen that the liability of the plaintiff in an injunction suit to respond to the defendant for damages after dissolution depended upon his voluntary undertaking contained in the conditions of the decree, or in his separate agreement and bond given to the court or defendant for that purpose. Of course, when the process has been sued out maliciously there may be a right of action in favor of the defendant. But this right depends upon the law governing malicious prosecutions, and has no relation to the claim for damages urged by defendant in this case. In *Palmer v. Foley*, 71 N. Y. 106, Judge Folger expresses this condition of the law :

"It seems that without some security given before the granting of an injunction order, or without some order of the court or a judge, requiring some act on the part of the plaintiff which is equivalent to the giving of security such as a deposit of money in court—the defendant

has no remedy for any damages which he may sustain from the issuing of the injunction, unless the conduct of the plaintiff has been such as to give ground for an action for malicious prosecution." In *Russell v. Farley*, 105 U. S. 433, Justice Bradley, in alluding to the practice of courts of chancery in granting injunctions, says: "And if the legal right is doubtful, either in point of law or of fact, the court is always reluctant to take a course which may result in material injury to either party, for the damage arising from the act of the court itself is *damnum absque injuria,* for which there is no redress except a decree for the costs of the suit, or in a proper case, an action for malicious prosecution. To remedy this difficulty the court, in the exercise of its discretion, frequently resorts to the expedient of imposing terms and conditions upon the party at whose instance it proposes to act."

Such exemption of the plaintiff from damages, in the absence of any terms or conditions accepted by him to pay them, rests upon the broad policy of the law which regards the courts open at all times to all persons for the enforcement of their rights by civil action. Suitors are presumably acting in accordance with law when they obtain in the courts what the courts award them, and should not be punished for accepting what they could not obtain except by such orders and judgments. When a suitor procures a writ or order of injunction upon a fair presentation of facts to the court in good faith he has never been regarded as responsible in damages therefor, either in law or equity, unless he has made himself so by some voluntary undertaking. In such case he stands before the law like a suitor in any other process or proceeding. This I understand to be the rule, as universally recognized and approved. *Sturgis v. Knapp*, 33 Vt. 486; *Gorton v. Brown*, 27 Ill. 489; *Lawton v. Green*, 5 Hun. 157; *L. & O. R. R. Co. v. Applegate*, 8 Dana 289; *Palmer v. Foley*, 71 N. Y. 106; *Russell v. Farley*, 105 U. S. 433; *Iron Mountain Bank v. Mercantile Bank*, 4 Mo. App. 505. If, therefore, the plaintiff, in the absence

of an undertaking to indemnify, is exempt from damages consequent upon an interlocutory order of injunction when dissolved, *a fortiori* he will be exempt in in the absence of such undertaking, when the injunction issues only after a final hearing upon the merits of the case.   In this case there was no promise or undertaking of any kind to indemnify the defendant in the event of a dissolution of the injunction by reversal on appeal.   I am not aware that deposits, conditions or bonds were ever exacted from the plaintiff upon the awarding of an injunction after final hearing.   Without affirming I will not pretend to deny the inherent power of a court of chancery, unrestricted by statutory law, to exact such undertaking when it is advised of an appeal, and has doubts about the correctness of its decision.   Under the practice in England the chancellor could suspend the operation of the injunction during appeal, when he had doubts about the correctness of his decision.   Kerr on Inj. 32, second edition.   Having ascertained the jurisdiction and practice of courts of equity on the matter of damages consequent to injunctions as contained in the general law independent of statute, let us consider the meaning and import of our statutes bearing upon the subject.   By section 2710 it is provided that " no injunction, unless on final hearing or judgment, shall issue in any case except in suits instituted by the state in its own behalf, until the plaintiff execute a bond with sufficient security to the other party in such sum as the court or judge shall deem sufficient to secure the amount or other matter to be enjoined, and all damages that may be occasioned by such injunction, conditioned that the plaintiff will abide the decision which shall be made thereon and pay all sums of money, damages, and costs that shall be adjudged against him if the injunction shall be dissolved."   R. S. 1879, § 2710.   This provision, which has been in force since 1835, is very plain in its terms.   R. S. 1835, p. 314.   It assumes to control the discretion of the courts in respect to safeguards for the indemnity of the defendant. and pre-

The City of St. Louis v. The St. Louis Gaslight Company.

scribes a particular one in the nature of a bond, which they must not fail to exact before issue of the order of injunction. But this command of the statute applies only to interlocutory injunctions, and expressly excepts from its operation injunctions issued on final hearing or judgment. The practice of the court in respect to such injunctions is not affected, and may be regarded as remaining in force as under the general law, which practice required no bond or condition of any sort, as we have just seen.

Section 2712, which provides for the assessment of damages on the dissolution of an injunction, relates to only such damages as the plaintiff is liable for on his undertaking. There is nothing in its language or phraseology to indicate that the legislature intended to extend the jurisdiction of the court or the liability of the plaintiff in respect to damages. The section evidently relates to damages for which the plaintiff has given his undertaking of indemnity. This is clear from the language of the subsequent section 2713, which requires the damages so ascertained and assessed to be entered in the form of a judgment against the obligors in the plaintiff's bond. Indeed, there is no provision for the assessment of damages except as incident to a bond. A suit in which no bond or undertaking is provided for by law or exacted by the court, as to any damages resulting to the defendant from a legitimate prosecution thereof, presents an instance of *damnum absque injuria,* and is like any ordinary suit which leaves the defendant heir to much inconvenience and pecuniary loss, notwithstanding a final judgment in his favor.

For these reasons I am persuaded that the action of the circuit court in discontinuing the proceedings to assess damages was correct, and that the judgment of the court of appeals affirming the judgment below should be affirmed and it is so ordered.

Ewing concurs. Philips, commissioner, not sitting, having been of counsel in the principal case in the appellate court.