Teasdale v. Jones.

W. B. Teasdale, Assignee Mastin Bank, Appellant, v. O. A. Jones *et al.*, Respondents.

Kansas City Court of Appeals, March 31, 1890.

1. **Injunction:** DAMAGES : BOND : PLAINTIFF'S LIABILITY. On the dissolution of a temporary injunction, damages sustained by reason of the granting thereof should be assessed against the plaintiff, and this, too, notwithstanding the plaintiff did not sign the bond made and accepted under the statutes at the time of the granting such injunction.

2. —— : WHAT DAMAGES ARE ASSESSABLE. On motion to assess damages on dissolution, only such damages are assessable as resulted from the issuing of the temporary injunction and to the dissolution thereof ; and costs and expenses thereafter, though on appeal, have no place in the judgment on such motion.

*Appeal from the Johnson Circuit Court.*—HON. CHAS. W. SLOAN, Judge.

REVERSED AND REMANDED (*with directions*).

*Johnson & Lucas* and *T. A. Frank Jones*, for the appellant.

(1) Under the motion to assess damages in this case no judgment for damages could properly be given against any one, because it does not allege there was an injunction bond. Under the injunction bond in this case no judgment for damages could properly be given against the plaintiff, because neither the plaintiff nor his predecessor, as assignee, was a party to the injunction bond. The liability for damages caused by an injunction is a contract liability, and grows out of the injunction bond. *Keber v. Bank*, 4 Mo. App. 195; *Bank v. Bank*, 4 Mo. App. 505; *St. Louis v. Gaslight Co.*, 82 Mo. 349. (2) Evidence of attorneys' fees and

other expenses and damages incurred after the dissolution of the injunction in the lower court was improperly admitted. High on Injunctions [ 2 Ed. ] secs. 1431, 1536, 1636, 1665. ( 3 ) The plaintiff objects generally to the judgment given in this case because it appears upon the face that it was constructed upon the erroneous theory of assessing the damages, and of dividing them arbitrarily between the plaintiff in this case and the plaintiff in another case, which is set out in the two preceding sections.

*J. D. Shewalter* and *Graves & Aull*, for the respondent Jones.

( 1 ) The record in this cause shows that an injunction bond was given and filed at the time the injunction was granted. This bond was at the trial offered and read in evidence, and without objection on the part of appellant. Judgment was taken against appellant and not against the securities on the bond, in accordance with the decision and direction of this court in this cause on the former appeal. *Grant v. Crockell*, 9 At. Rep. ( N. J. ) 201 ; *Noland v. Johns*, 27 Mo. App. 508 ; *Coates v. Elliott*, 27 Mo. App. 510. ( 2 ) We are at a loss to understand by what stretch of the imagination appellant arrived at the attorneys' fees assessed in this cause. These attorneys' fees were properly allowed. *Bohan v. Casey*, 5 Mo. App. 101 ; *Buford v. Packet Co.*, 69 Mo. 611 ; *Holthaus v. Hart*, 9 Mo. App. 1 ; *Hale v. Megan*, 39 Mo. 272 ; *Kennedy v. Hammond*, 16 Mo. 341. ( 3 ) There was not a syllable of evidence in this cause in regard to any attorneys' fees or other expenses or damages incurred after the dissolution of the injunction. The injunction was dissolved in the lower court, but Coates, assignee, appealed the cause to this court, where the injunction was finally dissolved. Plaintiff is liable for expenses incurred in dissolving

the injunction. This includes both courts where. the judgment dissolving the injunction is appealed from.

GILL, J.—In March, 1884, the respondent Jones owned and held a note for $1,892.50, then past due, and signed by one Reed. Jones also held, as a security for said note, a deed of trust on some real estate in Higginsville, Missouri, as also a chattel mortgage on some livery stock in the town of Higginsville. There were prior incumbrances held by another party on both the real and personal propery. Default being made in payment of Jones' note, he was proceeding to sell this real estate and personal property, subject to the prior liens, and for that purpose had advertised a public sale, when on March 29, 1884, Coates, the former assignee of the Mastin Bank, and plaintiff's predecessor, and Nolan, Reed's administrator, brought two separate injunction suits, the one seeking to enjoin the sale of the real estate and the other to prevent the sale of the livery stock. To secure a temporary injunction, Coates presented a bond made by John J. Mastin "as principal for the plaintiff" and D. C. Mastin as security, and which was approved, and the interlocutory order enjoining defendant Jones was issued. Nolan likewise secured bond and the two cases, it seems, involving the same issues, were ultimately tried in the Johnson circuit court, where defendant Jones was successful, and the two injunctions dissolved. Thereupon both cases were appealed to this court and were affirmed, in so far as the dissolution of the injunctions was concerned, but reversed and remanded on the matter of assessing and entering up judgments for damages against the securities in the injunction bonds. 27 Mo. App. 502–510. Before this cause was again reached in the circuit court Assignee Coates died, and Teasdale, his successor, was substituted in the action.

Acting upon the suggestion of this court, when the cause was heretofore heard, defendant Jones sought to

have his damages first assessed against the plaintiff, Mastin Bank, and with that view in the circuit court filed an amended motion to assess damages. Upon a hearing the lower court found the damages suffered by defendant Jones on account of the injunction to be $1,985.80, and gave judgment against the plaintiff as assignee for that amount. From this judgment the plaintiff has appealed.

I.   We can see no legal objection, whatever, to the revival of this cause as against Teasdale, assignee and successor of Coates, and shall, therefore, first address ourselves to point 4 in plaintiff's brief, the first substantial question raised in this record.

It is contended, in the words of counsel, that "under the injunction bond in this case no judgment for damages can properly be given against the plaintiff, because neither the plaintiff, nor his predecessor, as assignee, was a party to the injunction bond." In the early history of equity jurisprudence temporary injunctions were often issued by the chancellor simply on the *ex parte* showing made by the plaintiff and without requiring any bond or other security ; and, if on a final hearing, it transpired that the injunction was without just cause, and was, therefore, dissolved, the party enjoined could not recover damages occasioned thereby, unless it was shown that the injunction was sued out through malice and want of probable cause. In other words, the only relief for injury, however grievous or oppressive, the defendant had on defeating a wrongful writ of injunction, was an action, as in other cases, for malicious prosecution. And to sustain this, of course, it was necessary to allege, and prove, that the injunction was sued out through malice and want of probable cause. The frequent injustice and great, but irreparable, damage thus following hasty and ill-advised injunctions encouraged the equity courts to require, in their discretion, the plaintiff, when asking this extraordinary writ, to

Teasdale v. Jones.

put up some pledge or security (money, bonds or other valuables), to answer for such damages as may be done the defendant, in case, on final hearing, it be determined that there were no grounds for such injunction. It is in the line of this very just course that we have a statute, requiring a bond from the plaintiff in the cases where a temporary injunction is asked for. Section 5498, Revised Statutes, 1879, contains this provision, and, as amended by the act of 1883, it reads as follows: "No injunction, unless on final hearing or judgment, shall issue in any case, except in suits instituted by the state in its own behalf, until the plaintiff, or some responsible person for him, shall have executed a bond with sufficient surety or sureties, to the other party, in such sum as the court or judge shall deem sufficient to secure the amount or other matter to be enjoined and all damages that may be occasioned by such injunction to the parties enjoined or to any party interested in the subject-matter of the controversy, conditioned that the plaintiff will abide the decision which shall be made thereon, and pay all sums of money, damages and costs that shall be adjudged against him, if the injunction shall be dissolved." Section 5500, Revised Statutes, 1889, provides that "*upon the dissolution* of an injunction —— damages shall be assessed," etc.

Now we have here, in the history of this case, a temporary injunction granted, prohibiting defendant Jones from foreclosing his deed of trust, and this interlocutory order was issued only after plaintiff had furnished the bond—not a bond, it is true, signed by the *plaintiff*, but, in the words of the statute, executed by a "*responsible person for him*" (the said plaintiff) with security satisfactory to the court issuing the injunction. The condition of this bond so given by a "*responsible person*" for the plaintiff, is this, to-wit:

"Now if said plaintiff shall abide the decision which shall be made thereon, and pay all sums of money,

damages and costs that shall be adjudged against *him* (the plaintiff) if the injunction shall be dissolved, then this obligation is to be void, otherwise to remain in full force.

"[ Signed ]　　　　JOHN J. MASTIN, (Seal.)
"DAVID C. MASTIN. (Seal.)"

At the final hearing in the circuit court this injunction was dissolved, and at the time the court proceeded, on motion, to assess the damages and render judgment therefor against the sureties on the bond. These sureties appealing to this court, we held (27 Mo. App. 510) that such a judgment against the sureties was premature—that by the terms of their bond they were only liable for the *default* of the plaintiff in failing to pay the damages which might be assessed against him. The cause was remanded and now we have a judgment against plaintiff alone for the damages secured by the bond, and plaintiff contends that no such judgment can be rendered as he (nor his predecessors) was not an obligor in such bond. To adopt this contention leads to this anomalous and absurd result, to-wit: That there is no indemnity whatever here provided for this wronged defendant. He has already been advised (and correctly, too) that he cannot recover his damages from the *sureties* until he had exhausted his remedy—procured a fruitless judgment for damages against the plaintiff—and now we are asked to say that he *cannot get a judgment against the plaintiff*. Under the conditions of this bond these sureties are only liable for such damages as may be *adjudged against the plaintiff*, and if no damages can be awarded against *him* then such a bond is entirely worthless, although it is *just the bond* directed by the statute—contains the statutory conditions in the very words of the statute; and though the plaintiff (or his predecessor) is not a nominal maker, yet said bond is executed, as the statute says it may be, by "some responsible person for said plaintiff."

We cannot, therefore, subscribe to the position of plaintiff's counsel, leading as it does to the practical nullification of this very just statute for the protection of the rights of defendants in injunction suits. The cases of *Keber v. Mercantile Bank*, 4 Mo. App. 195 and *St. Louis v. St. Louis Gas Co.*, 82 Mo, 349, do not sustain plaintiff's position, nor conflict with our holding here. In the *Keber case* there was an action for damages (on the case at common law) brought by Keber against the bank for a wrongful injunction, and the court held that in such case he should have alleged and proved that such an action was prosecuted through malice and without probable cause. And in the *St. Louis Gas case* there was no bond given at the institution of the suit, and hence no temporary injunction applied for or granted. In neither of these cases is it held, as contended for here, that the defendant cannot have damages assessed against the unsuccessful plaintiff where he has voluntarily entered into a bond (or secured another to do so for him) to cover such damages.

It comports with rule 5 and practice in equity courts, even in the absence of statutes requiring security, to demand valuables of some kind to secure the defendant; and in such cases, if the injunction be dissolved, the damages would be assessed by the court, and then such security condemned to the satisfaction of a judgment for such damages. *Palmer v. Foley*, 71 N. Y. 108; *Sturgis v. Knapp*, 33 Vt. 520, 521; *Russell v. Farley*, 105 U. S. 445; *St. Louis v. Gas Co.*, 82 Mo. 354. We decide, then, that the damages here complained of are properly assessable against the plaintiff assignee.

II. What damages now, or, rather, what losses or expenses, are to be considered in this summary proceeding against plaintiff? It will not be disputed that only such will be charged up against the plaintiff in this proceeding as are assumed by the giving of the bond for securing the same. The statute contemplates an assessment of only such damages as result from the issuing of

Teasdale v. Jones.

the temporary injunction and to the *dissolution of* the injunction order. Indeed, it has been held in this state that the motion to assess the damages must be filed in the court at the same term in which the final judgment dissolving the injunction is entered. It seems to have been the theory of the circuit judge (and which is expressly in his brief avowed by defendant Jones' counsel) that, as plaintiff appealed the decision and judgment of the circuit court dissolving the injunction, and gave an appeal bond, such appeal had the effect to revive the injunction order, and continue it in force till a final hearing in the court of appeals. In this, court and counsel are clearly in error. "Neither an injunction, nor a *decree dissolving an injunction*, is reversed or nullified by an appeal or writ of error." *Leonard v. Ozark*, 115 U. S. 465; *State ex rel. Busch v. Dillon*, 96 Mo. 56, and authorities cited on page 62; *Garrow v. Carpenter*, 4 Stewart & Porter, 336; *Hoyt v. Gelston*, 13 Johns. 139; *Town of Guilford v. Cornell*, 4 Abb. Pr. 223; 2 High on Inj., secs. 1536, 1636 and 1665. Any element of damage, then, coming from the costs or expenses of the injunction suit, *after* the final judgment in the circuit court, has no place in the judgment on this motion.

We find, upon an investigation of the testimony, that we can satisfactorily separate these illegal items of charge from those to which defendant Jones is entitled, and shall do so, and direct the lower court as to what the judgment should be, and thereby put an end to this protracted litigation. In our opinion, the theory of division of the aggregate damages between the two injunction suits, as adopted by the circuit court, was fair and just, and, after deducting the illegal charges, as above alluded to, we find that the judgment of the circuit court should have been for the defendant Jones in the sum of $1,865.40, instead of $1,985.80.

We, therefore, reverse the judgment of the circuit court, and remand the cause with directions that the

court below enter judgment for defendant, O. A. Jones, in a sum equal to the aggregate made up by computing six per cent. per annum interest on $1,865.40 from the date of the original judgment below (which was the thirteenth day of February, 1889) and adding said interest to said sum of $1,865.40. The costs of this appeal are adjudged against defendant Jones—all other costs to be taxed against plaintiff. The other judges concur.