# THE STATE ex rel. SOUTH MISSOURI PINE LUMBER COMPANY, Plaintiff, v. DEARING, Judge, et al.

### In Banc, February 24, 1904.

1. **PROHIBITION: Questions Considered.** In determining the right to a writ of prohibition to restrain a circuit judge from appointing a receiver, the Supreme Court will not consider the merits of that action nor of another action in injunction in another court which had restrained the holder of notes from foreclosing a deed of trust, which, it was alleged, rendered the maker insolvent, any further than to ascertain whether or not the court which issued the injunction had jurisdiction to do so.

2. **INJUNCTION: Restraining Foreclosure of Mortgage: Where Brought.** A suit to restrain the foreclosure of a deed of trust, and to cancel the notes secured thereby, being an action *in personam*, may be brought in other counties than that in which the land lies. Such an equitable action is not one "affecting title to real estate" within the meaning of the statute.

3. ———: **Jurisdiction: How Determined: Prayer.** The jurisdiction of the court is not determined by the prayer for relief, but by the facts stated which constitute the cause of action.

4. **EQUITY COURTS: Powers.** Circuit courts are vested with general original jurisdiction of suits in equity, and in such cases are invested with all the powers inherent in an English court of chancery, except in so far as those powers have been limited by statute.

5. ———: **Injunction: Dismissal: Power to Continue Pending Appeal.** The circuit court in this State has the power, in a suit in equity, in which a temporary injunction has been granted, in its final judgment in favor of defendant on the merits, dissolving the injunction and dismissing the plaintiff's bill, to continue the temporary injunction in force pending an appeal from the judgment. The exercise of that power is conformable with the practice of courts of equity, and there is nothing in the Missouri statutes inhibiting it, where it is exercised under proper safeguards for the protection of all concerned.

Prohibition.

RULE MADE ABSOLUTE.

*Johnson, Rusk & Stringfellow* and *Robert A. Holland, Jr.,* for relator.

· The trial court, notwithstanding it found that there was no equity in the bill, had the undoubted power by its decree to preserve the *status quo* pending the appeal in order that irremediable injury might not be inflicted upon the plaintiff. It having been shown to the satisfaction of the court, and so found that the Crommers were insolvent, to leave them free to enforce the collection of the notes, the cancellation of which was an important part of the relief sought in plaintiff's bill, would operate as a practical denial of plaintiff's right to an appeal. In making the order continuing the injunction pending the appeal, the trial court was not only acting within its clear legal right, but was exercising a sound discretion, and any other action on its part would have been oppressive. Hovey v. McDonald, 109 U. S. 161; Leonard v. Ozark Land Co., 115 U. S. 465; Reynolds v. Iron Silver Mine Co., 33 Fed. 354; Knox County v. Harshman, 132 U. S. 14; Min. Co. v. Eureka Hill Mining Co., 12 Pac. 660; Ex parte Planters, etc., 50 Ala. 390; McMichael v. Eckman, 26 Fla. 43; Neiser v. Thomas, 46 Mo. App. 52; State ex rel. v. Dillon, 96 Mo. 56; Parker v. Judges Circuit Court, 25 U. S. 561.

*M. R. Smith, W. S. Anthony* and *O. L. Munger* for respondents.

(1) If the circuit court of the city of St. Louis never acquired jurisdiction of the subject-matter of the suit between the South Missouri Pine Lumber Company, plaintiff, and Wm. Crommer et al., defendants, it will not be seriously contended that there is any conflict of

jurisdiction between it and the Wayne County Circuit Court. Defendants assert that on the face of the pleadings in this proceeding, it is evident that title to the real estate situate in Wayne, Carter and Butler counties, was involved and an issue to be tried, and hence the circuit court of St. Louis city never had jurisdiction of the subject-matter of the case, and all of its decrees and orders made therein were nullities. R. S. 1899, sec. 564; Vogelsmeier v. Prendergrast, 137 Mo. 286; Bray v. Marshall, 66 Mo. 122; Parlin, etc., Co. v. Horn, 145 Mo. 119; Overton v. Overton, 131 Mo. 559; Vandergriff v. Brock, 158 Mo. 686. (a) A suit to cancel a deed of trust alleged to have been procured by fraud is a suit involving title to be tried. Nearen v. Bakewell, 110 Mo. 646; Overton v. Overton, supra; Hanna v. South St. Joseph Land Co., 126 Mo. 9; Brown on Jurisdiction, sec. 21a. (b) If the St. Louis City Circuit Court had no jurisdiction of the subject-matter involved and to be tried of the suit brought in the Wayne County Circuit Court by the Crommers, its decree and orders were invalid, and hence no conflict of jurisdiction exists. State ex rel. v. Ross, 122 Mo. 460; Railroad v. Wear, 135 Mo. 250; Thompson v. Tracy, 61 N. Y. 37; Appo v. People, 20 N. Y. 531; Morris v. Lenox, 8 Mo. 252; State ex rel. v. Walls, 113 Mo. 42. (2) The dissolution of a temporary restraining order is not revived and continued by an appeal. Authorities under point 1. (3) If the St. Louis City Circuit Court had no authority to amend its decree by reviving and continuing the injunction against the Crommers, during the appeal, such amendment is void, and being void, defendant, Judge Dearing, has in no way interfered with the jurisdiction of that court, and therefore the rule should be discharged. The amendment was void. Pocantico, etc., Co. v. Low, 21 Misc. (N. Y.) 173; Fellows v. Hermans, 13 Abb. Prac. (N. S.) 9; Spears v. Matthews, 66 N. Y. 127; Cowell v. Bank, 4 Supp. (N. Y.) 6; Powers v. Chabot, 93 Cal. 266; 2 Cyc. Law & Proced., 926, note

(55); Halsey v. Flint, 15 Abb. Pr. (N. Y.) 367; Butler v. Davis, 52 Tex. 74; Dusenberry v. Keily, 85 N. Y. 388; Mills v. Parkhurst, 5 N. Y. Supp.

BRACE, J.—This is a proceeding in prohibition instituted in this court in which the questions to be determined are raised by demurrer to the returns of the respondents.

The facts admitted by the pleadings, material to the present inquiry, are in substance as follows:

In a suit in equity brought by the relator company in the St. Louis City Circuit Court on the 26th of March, 1902, against William Crommer, William F. Crommer, E. P. Ewart, S. C. Newhouse and S. J. Malugan, in which the relator company sought a discovery of, an accounting for, and the recovery of the value of certain shares of relator's capital stock and other valuable property which it was alleged the said Ewart and Newhouse had received by means of a fraudulent conspiracy by them entered into with the said Crommers, whereby in the promotion of the organization of said company, a lumber plant, consisting of 7,500 acres of land situate in the counties of Carter, Wayne and Butler, and other property appurtenant to and connected therewith, contracted for by said promoters for the sum of $21,000, was fraudulently sold by the said Crommers to the relator company for the sum of $37,250, the relator in its petition, in which the fraudulent acts complained of are set out in detail and at great length, in substance prayed for a personal judgment against the said William Crommers, Williams F. Crommers, E. P. Ewart and S. C. Newhouse for the value of the property alleged to have been so fraudulently obtained, for damages for fraudulent misrepresentations as to the quality and value of said lumber plant and further prayed "that six notes of one thousand dollars each" secured by a deed of trust on said lands given by the relator in part payment of the purchase money for said property and held by the

said Crommers "be cancelled, set aside and for naught held," and further "that all of the defendants, their servants, agents, attorneys and employees be enjoined from selling or attempting to sell on the 11th of April, 1902, or at any other time, the property described in said deed of trust, or any part thereof, or from attempting to collect said six notes of one thousand dollars each, and that in the meantime a temporary writ of injunction be issued enjoining and restraining all of said defendants, their agents, servants and employees from selling or attempting to sell the property described in said deed of trust or any part thereof, or from transferring said six notes of one thousand dollars each, or any of them, or from attempting to collect the same and for such other and further orders and relief as to the court may seem proper, the premises considered." The said Malugan was made a party defendant in the action because, as substitute trustee, he, at the request of the Crommers, had advertised said real estate for sale under said deed of trust on the 11th of April, 1902. Upon the filing of the petition and the execution of an injunction bond in the sum of $6,000, with approved security, a temporary injunction was issued.

Afterwards the defendants in due time filed answer to plaintiff's petition, the answers of Ewart, Newhouse and Malugan being in the nature of a general denial and the answer of the Crommers putting in issue the allegations of the petition and containing a cross-bill in which they asked for judgment upon said notes and the foreclosure of said deed of trust. Upon these answers issue was duly joined by reply.

"Afterwards said cause coming on for trial upon the issues joined before Honorable James R. Kinealy, Judge of Division Number Ten of the Circuit Court of the City of St. Louis, and on the 23rd day of June, 1903, the said judge of said court, after hearing the evidence in said cause, found the issues in favor of the defendants and made an order dismissing plaintiff's bill, and

found the issues against the defendants upon their cross bill and made an order dismissing said cross-bill.

Said order and judgment of said court was in words and figures as follows, to-wit: .

" 'Now at this day this cause coming on for hearing come the parties herein by their respective attorneys and submit this cause to the court upon the pleadings and evidence adduced, and the court, having heard and duly considered the same, doth order and adjudge that the temporary injunction granted in this cause on March 26, 1902, be and the same is hereby dissolved in every particular. And the court doth find the issues joined in the plaintiff's petition herein in favor of defendants. It is thereupon considered and adjudged by the court that the plaintiff take nothing by its suit in this behalf. and that defendants go hence without day and recover of plaintiff and the American Surety Company of New York, surety on that injunction bond, their costs and charges herein expended, and that execution shall issue therefor. And the court doth further find the issues joined in the cross-bill of defendants William Crommer and William F. Crommer in favor of the plaintiff. It is therefore considered and adjudged by the court that the defendants, William Crommer and William F. Crommer, take nothing by their suit on the cross-bill herein, because of want of jurisdiction in this court over the subject-matter thereof.'

"On the day following, June 24, 1903, the said Crommers brought suit in the circuit court of Wayne county against the South Missouri Pine Lumber Company upon the said six notes held by them against the company, in which they sought to recover judgment for the amount of said notes, and in the petition they also prayed for a decree foreclosing their deed of trust, and asked that a receiver be appointed for the company, alleging insolvency, mismanagement and other grounds as a reason for the appointment of a receiver.

"On the day following, June 25, 1903, the attention

of Judge Kinealy was called to the fact that said suit
had been brought by the defendants Crommers in the
Wayne County Circuit Court, and at the request of the
South Missouri Pine Lumber Company and in open
court in the presence of counsel for both sides, Judge
Kinealy made an order continuing the preliminary in-
junction in force pending the disposition of the motion
for new trial on that day filed therein and the said
Crommers refrained from taking any further steps in
said Wayne county case, pending the disposition of the
motion for new trial.

"On July 11th, the motion for new trial in the St.
Louis case was taken up and argued and submitted to
Judge Kinealy and was by him overruled, whereupon
the South Missouri Pine Lumber Company filed its mo-
tion, in which it asked that the court modify its decree
to the extent of continuing in force the injunction
against the Crommers pending the appeal to the Su-
preme Court, alleging that the Crommers were insolv-
ent, and unless the injunction was so continued would
proceed at once to force the collection of their notes and
would succeed in doing so before the case could be de-
termined by the Supreme Court. This motion was
heard and considered by the court, all of the parties
were represented, and the Crommers were present in
person and by counsel. The motion was sustained, and
the court as its final judgment continued in full force
and effect the injunction which had been issued at the
bringing of the suit until the case should be decided by
the Supreme Court upon condition that the plaintiff,
the South Missouri Pine Lumber Company, give a bond
to the defendants Crommers in addition to the statutory
appeal bond in the sum of fourteen thousand dollars,
conditioned for the payment of said notes and interest
in full in case said judgment should be affirmed in whole
or in part. On the same day plaintiff complied with said
order by filing its bond in the sum of fourteen thousand
dollars, conditioned as required by said judgment with

the American Surety Company of New York as surety, which said bond was on that day approved by the court.

"After the modification of said decree, plaintiff filed its affidavit for appeal. On said 11th day of July the appeal was allowed, and an appeal bond fixed at one thousand dollars, which was filed and approved on the same day, with the same surety, and time was given plaintiff in which to file its bill of exceptions.

"The defendants Crommers opposed the modification of said judgment, and contended, as they now contend, that the circuit court had no power, jurisdiction or right after finding the issues in favor of the defendants upon the merits of the case, to continue the injunction in force pending appeal, and that the bond of fourteen thousand dollars, executed in pursuance to said order, was illegal and void because of the fact as contended, that the court was without jurisdiction to make such order.

"On the 13th day of August, 1903, the Crommers appeared before the Honorable Frank R. Dearing, Judge of the Wayne Circuit Court, one of the respondents herein, in the said action brought by them on the 24th day of June, 1903, and obtained an order from said judge in said case, appointing W. L. Matthews, one of the respondents herein, receiver of the South Missouri Pine Lumber Company, over the objection of said company, and the said Matthews at once took charge of all of the assets and property of said company as receiver, notwithstanding the said company was possessed at the time of a large amount of real and personal property which was not covered in said deed of trust.

"Afterwards, on the 17th day of August, 1903, the South Missouri Pine Lumber Company filed in said Wayne County Circuit Court its motion to vacate said order appointing a receiver, and in said motion set out the proceedings and orders had and made in the circuit court of the city of St. Louis, which said proceedings and orders were pleaded as a bar to the right of said

Crommers to prosecute said Wayne county case, and in addition thereto put in issue the allegations of the petition under which said order appointing a receiver was made.

"Afterwards, on the 31st day of August, the said Crommers filed their suggestions in opposition to the motion to vacate, in which they admitted the making of the order and judgment continuing the injunction in force by the St. Louis court, and the giving of the bond for fourteen thousand dollars thereunder, but pleaded that said St. Louis court was without power or jurisdiction to make such order.

"The issues thus joined were heard in chambers by Judge Dearing on August 31, 1903, competent evidence was introduced to prove the orders and proceedings had and made by the St. Louis court, and after hearing the evidence adduced, Judge Dearing, on the 1st day of September, 1903, overruled said motion to vacate the order appointing a receiver, to which action the South Missouri Pine Lumber Company at the time excepted.

"Whereupon the company filed its affidavit for appeal and requested Judge Dearing to fix the amount of the appeal bond and to make an order upon the receiver to restore to the company all of its property in his hands upon the filing and approval of said appeal bond.

"Judge Dearing thereupon fixed the amount of the appeal bond at one thousand dollars, but refused to make the order, as requested, upon the receiver to restore the company its property. On September 3, 1903, the South Missouri Pine Lumber Company filed its appeal bond in said Wayne County Circuit Court in the sum of one thousand dollars, conditioned as required by law and said bond was on said date approved.

"On the 8th day of September, 1903, this petition was filed in this court praying for the remedy by prohibition, a provisional rule was issued by the Honorable W. C. Marshall restraining the defendants as prayed in the bill and commanding that the receiver restore to the

company its property forthwith, which said provisional writ was made returnable October 13, 1903.''

Counsel for respondents contend that the preliminary rule should be discharged and a peremptory writ denied on two grounds:

First, because the relator's action in the St. Louis City Circuit Court is one ''whereby the title to real estate'' in the counties of Carter, Wayne and Butler, may be affected'' within the meaning of section 564, Revised Statutes 1899, and no part of said real estate being within the city of St. Louis, said court was without jurisdiction to hear and determine the cause.

Second, because said court had no power to modify its judgment and continue the temporary injunction in force until the case should be decided by the Supreme Court on the appeal therefrom. .·

(1)  In this proceeding we have nothing to do with the merits of the two actions now pending in this court on appeal.  Any errors that may have been committed therein will be corrected in due course on the hearing of those appeals.  Hence, everything in the briefs of counsel bearing thereupon may be pretermitted, and in the statement of the proceedings therein, only so much has been stated as is necessary to present the questions to be determined on the present inquiry, which is necessarily limited to the jurisdiction of the St. Louis Circuit Court in the aforesaid action of the relator against the respondents therein named.

As to the respondent's first contention, it is only necessary to say that while the subject-matter of the controversy in that suit grew out of the alleged transactions between the parties in the sale and transfer of the lands in Carter, Wayne and Butler counties, the title to these lands was in no way involved in the controversy. It was purely and simply a suit in equity operating *in personam* upon the defendants.  That the court had jurisdiction of the persons of the defendants and of the subject-matter of the controversy between them is mani-

fest upon the face of the statement.  The only thing
that is urged, giving any countenance to the contention
that title to real estate is involved in that controversy,
is the prayer for relief in which the cancellation of the
notes given for part of the purchase money for those
lands, and an injunction restraining the foreclosure of
the deed of trust given to secure them is asked.  But
such prayer could not have the effect of converting
plaintiff's equitable action *in personam* into an action
"affecting title to real estate" within the meaning of
the section relied upon.  "In granting injunctions the
court operates *in personam* and may exercise its juris-
diction quite independently of the locality of the act to
be done; being an order directed to a person, it does not
run with the land." [Kerr on Injunctions (3 Ed.), pp.
6 and 7.]  This section of the statute, like the constitu-
tional provision vesting appellate jurisdiction in this
court in cases involving title to the real estate, applies
only to cases in which title to land is the subject of the
controversy and in which the judgment will operate di-
rectly upon the title, and not to those cases where the ti-
tle to land may be merely a subject of collateral inquiry
or in which the judgment will only affect the title inci-
dentally or collaterally.  [Ulrici v. Papin, 11 Mo. 43;
Railroad v. Mahoney, 42 Mo. 467; State ex rel. v.
Court of Appeals, 67 Mo. 199; Bailey v. Winn, 101 Mo.
649; McGregor v. Pollard, 130 Mo. 332; May v. Mort-
gage Trust Co., 138 Mo. 447; Heman v. Wade, 141 Mo.
596; Price v. Blankenship, 144 Mo. 203; Gay v. Savings
& Bldg. Assn., 149 Mo. 606; Bonner v. Lisenby, 157 Mo.
165; Ozark Land & Lumber Co. v. Robertson, 158 Mo.
322; Vandergrif v. Brock, 158 Mo. 681; Davis v. Wat-
son, 158 Mo. 192; Bruner Granitoid Co. v. Klein, 170
Mo. 225; Klingelhoefer v. Smith, 171 Mo. 455; Balz v.
Nelson, 171 Mo. 682; Porter v. Railroad, 175 Mo. 96.]
Moreover the jurisdiction of the court is not determined
by the prayer for relief, but by the facts stated, which
constitute the cause of action, and should those facts not

warrant the relief asked and it should nevertheless be granted, this would be error, which could be corrected on appeal, but the jurisdiction of the court would not be affected thereby. The subject of respondents' first contention has been so thoroughly considered and thrashed over in the cases cited and in others therein referred to, that further comment thereon is unnecessary. Not so with the second.

(2)    The precise question presented by that contention is: Has a circuit court in this State in a suit in equity, in which a temporary injunction has been granted, in its final judgment in favor of the defendant on the merits, dissolving the injunction and dismissing the plaintiff's bill, the power to continue the temporary injunction in force pending the appeal taken from that judgment? By the Constitution and laws of this State, circuit courts are invested with general original jurisdiction of suits in equity, subject to the right of appeal to the Supreme Court, or the Courts of Appeals, as the case may be, and in such cases are invested with all the powers inherent in an English court of chancery, except so far as those powers may have been limited by statute. As incident to their jurisdiction, the English chancery courts have power in a proper case to grant an interlocutory injunction to restrain a mischief complained of, and preserve matters *in statu quo* until the final determination of the issues therein.

In Kerr on Injunctions (3 Ed.), pp. 29 and 30, the learned author in speaking of the proceeding in English chancery courts says: "Where an action has been altogether dismissed by a Divisional Court, the Court of Appeals will in a proper case grant an injunction to restrain any of the parties from parting with the property till the hearing of the appeal. If an appeal is dismissed by the court, the jurisdiction of the court is gone, and no order can be made to bind the parties pending an appeal to the House of Lords. Where a plaintiff whose bill is about to be dismissed intends to appeal to the

House of Lords, he should ask that the decree dismiss-
ing the bill should be so framed as to keep alive the ju-
risdiction of the court. But the court has power on a
proper case being made out, to restrain by injunction all
dealings with a fund pending appeal to the House of
Lords, although the court has decided against the title
of the plaintiff and dismissed the action. The jurisdic-
tion, however, will be exercised with care and so as not
to encourage anyone to present appeals for the purpose
of delay.''

And thus in England this salutary power is pre-
served and may be exercised in an equity suit from the
inception to the final determination of the cause in the
court of last resort. [Huguenin v. Baseley, 15 Ves.
179; Willan v. Willan, 16 Ves. 216; Monkhouse v. Cor-
poration of Bedford, 17 Ves. 380; Way v. Foy, 18 Ves.
452; Lewes v. Morgan, 5 Price 468; Polini v. Gray, 12
L. R. Chan. 438.]

It was aptly said by JESSEL, M. R., in the last case:
''It appears to me on principle that the court ought to
possess that jurisdiction, because the principle which
underlies all orders for the preservation of property
pending litigation is this, that the successful party is to
reap the fruit of that litigation and not obtain merely
a barren success. That principle, as it appears to me, ap-
plies as much to the court of the first instance before the
first trial, and to the Court of Appeals before the sec-
ond trial, as to the court of last instance before the hear-
ing of the final appeal.''

So in this country, the jurisdiction of courts of
equity of the first instance to make all proper orders
for the preservation of the subject-matter of the contro-
versy *in statu quo* until the final determination thereof
in the court of last resort has been uniformly main-
tained by the highest authority. [Messonnier v. Kau-
man, 3 John. Ch. 65; Hart v. Mayor of Albany, 3 Paige

381; Doughty v. Railroad, 7 N. J. Eq. (3 Halsted Ch.) 629; Hovey v. McDonald, 109 U. S. 150.]

In Messonnier v. Kauman, supra, Chancellor KENT, after reviewing the English cases, said: "There is no doubt, therefore, that the effect of such a motion as the present one would be matter of course in the English chancery, before the appeal would be allowed as a *supersedeas.* I see no reason, nor any objection, against the possession and exercise of equal power in this court. In Green v. Winter (1 Johns. Ch. 77) the question was discussed and considered; and I concluded that it rested in the discretion of this court to determine when, and how far, a party might have liberty to proceed, notwithstanding an appeal. The same point was raised, and the same conclusion drawn, in Bradwell v. Weeks (1 Johns. Ch. 325)."

In Hart v. Mayor, supra, it was held that, "Where an appeal from an order dissolving an injunction involved an important question of right between the parties, and there was probable cause for appealing, and no particular injury could arise to the respondent from the delay, the court, after hearing both parties, granted a temporary injunction, restraining the further proceedings of the defendants in relation to the subject-matter of the first injunction, until the appellants had a reasonable time to be heard before the appellate court."

In Doughty v. Railroad, supra, the Court of Appeals of New Jersey, approving Hart v. Mayor, supra, said, per GREEN, C. J.: "It is a power which, in all cases where the merits are thus necessarily involved, had better be left to the discretion of the chancellor. He may properly exercise it, and with much more safety than this court are likely to do. He is familiar with the case, and may, without the necessity of a further argument, if he thinks the case demands it, grant a temporary injunction until the cause can be heard in this court"

In Hovey v. McDonald, supra, the Supreme Court

of the United States, per BRADLEY, J., said: "In England, until the year 1772, an appeal from a decree or order in chancery suspended all proceedings; but since that time a contrary rule has prevailed there. The subject was reviewed by the House of Lords in 1807, and an order was made establishing the right of the chancellor to determine whether and how far an appeal should be suspensive of proceedings, subject to the order of the House on the same subject. [See Palmer's Pract. H. L. 9, 10; 15 Vesey 184; 3 Paige 383-385.] In this country the matter is usually regulated by statute or rules of court, and generally speaking an appeal, upon giving the security required by law (when security is required), suspends further proceedings, and operates as a supersedeas of execution. This, as we have seen, is the case in the circuit courts of the United States. But the decree itself, without further proceedings, may have an intrinsic effect which can only be suspended by an affirmative order, either of the court which makes the decree, or of the appellate tribunal. This court in the Slaughter-House Cases, 10 Wall. 273, decided that an appeal from a decree granting, refusing or dissolving an injunction, does not disturb its operative effect. Mr. Justice CLIFFORD, delivering the opinion of the court, said, 'It is quite certain that neither an injunction, nor a decree dissolving an injunction passed in a circuit court, is reversed or nullified by an appeal or writ of error before the cause is heard in this court;' and held that the same rule applies in writs of error from State courts in equity proceedings; and the decision of the court was based upon that view of the law. It was decided that neither a decree for an injunction nor a decree dissolving an injunction was suspended in its effect by the writ of error, though all the requirements for a supersedeas were complied with. It was not decided that the court below had no power, if the purposes of justice required it, to order a continuance of the *status quo* until a decision should be made by the appellate court, or until that

court should order the contrary.   This power undoubt-
edly exists, and should always be exercised, when any
irremediable injury may result from the effect of the
decree as rendered; but it is a discretionary power,
and its exercise or non-exercise is not an appealable
matter.   In recognition of this power, and for the pur-
pose of facilitating its proper exercise in certain cases,
on appeals from the circuit courts, this court by an ad-
ditional rule of practice in equity, adopted in October
term, 1878, declared that, 'When an appeal from a final
decree, in an equity suit, granting or dissolving an in-
junction, is allowed by a justice or judge who took part
in the decision of the cause, he may, in his discretion, at
the time of such allowance, make an order suspending
or modifying the injunction during the pendency of
the appeal upon such terms as to bond or otherwise as
he may consider proper for the security of the rights of
the opposite party.   Rule 93.' '' ·

The present case is the first one that has come be-
fore this court in which the question of the existence of
this power has ever been raised, and in the light of the
authorities cited, to which many others might be added,
we have no hesitation in holding, in conformity to the
rulings of the highest authorities in England and Amer-
ica on the subject, that the St. Louis City Circuit Court,
in the exercise of its jurisdiction as a court of equity,
had full power, in its final judgment or decree in the
case stated, to continue in force the interlocutory in-
junction granted at the beginning of the cause pending
the appeal therefrom to the Supreme Court.   The ex-
ercise of that power is conformable with the practice of
courts of equity, and there is nothing in our statute in-
hibiting it.   On the contrary, its exercise is in harmony
with the spirit of the statute which provides a remedy
by injunction, ''to prevent the doing of any legal wrong
whatever, whenever an adequate remedy can not be af-
forded by an action for damages'' (R. S. 1899, sec.
3649); for a temporary injunction ''during the litiga-

tion'' (sec. 3630, R. S. 1899); and for security to protect from injury by such injunction (sec. 3637, R. S. 1899). Nor do we find anything in the authorities cited by the learned counsel for respondents that raises a doubt as to the existence of this power in a court of equity, or of the propriety of its exercise in a proper case under proper safeguards for the protection of all concerned. The express recognition by this court in this case of the right of the court below in such cases to exercise such power is perhaps opportune in view of the fact that it is now held by the appellate courts of this State, in accordance with the great weight of authority, that neither a decree for an injunction, nor a decree dissolving an injunction, is suspended by appeal. [State ex rel. v. Dillon, 96 Mo. 56; Teasdale v. Jones, 40 Mo. App. 243; Neiser v. Thomas, 46 Mo. App. 47; Graham v. Conway, 82 Mo. App. 647.] A holding which in many cases may make it necessary to the ends of justice that the power should be exercised. A formulated rule on the subject could not well be much more than a paraphrase of that of the Supreme Court of the United States.

It follows from what has been said that the demurrers to the returns should be sustained, the preliminary rule be made absolute, and a peremptory writ of prohibition issue as prayed for. It is accordingly so ordered. All concur, except *Burgess, J.,* absent.