George W. SISK and Rosemary B. Sisk, Respondents,

v.

J. M. MOLINARO, Appellant.

No. 50255.

Supreme Court of Missouri, Division No. 2.

March 9, 1964.

Walter A. Raymond, Kansas City, Fred Mancuso and Raymond, West & Cochrane, Kansas City, of counsel, for appellant.

Albert Thomson, Robert W. Cook, Kansas City, Linde, Thomson, Vandyke, Fairchild & Langworthy, Kansas City, of counsel, for respondents.

EAGER, Judge.

Plaintiffs, husband and wife, filed suit in Jackson County against Dr. J. M. Molinaro. Under the circumstances, we find it necessary to digest the pleadings in some detail. By an amended petition plaintiffs alleged: that they had given defendant on February 24, 1961, a written option to purchase certain described land in Belton, Cass County, Missouri, for $60,000, of which $1,000 was paid down; that it was provided therein that if defendant exercised the option he would pay an additional $29,000 in cash, the balance to be represented by a note and deed of trust, with $15,000 payable in one year from date of deed, and the balance in two years; that defendant was required to exercise the option on or before June 2, 1961, but that he requested and was granted an extension to June 10, 1961; that defendant did exercise the said option and on or about June 10, 1961, he deposited his check for $29,000 with Kansas City Title Insurance Company; that plaintiffs agreed to the substitution of title insurance in lieu of an abstract of title, and that on or about June 14, 1961, they deposited with Kansas City Title Insurance Company an executed warranty deed to the property, together with a note and deed of trust to be executed by defendant; that plaintiffs had complied with all requirements obligatory upon them, but that defendant had failed and refused to sign the note and deed of trust or to complete the transaction; that plaintiffs had no adequate remedy at law; they prayed a decree "providing for the specific performance of said option agreement, interest, costs and damages, including a reasonable attorneys' fee, and for such other orders and decrees as may be proper under the circumstances." (There were also allegations to the effect that a preliminary title opinion showed a "shortage of 5 feet" in the description of the property but that defendant, being fully aware of this, procured an extension of the option and made his deposit, and that the shortage was thereafter rectified.)

Defendant alleged in his answer: that plaintiffs had agreed in writing to furnish defendant good and merchantable title and had failed to do so, in that a strip of ground 20 feet in width was "not included in said description," and that upon written notice plaintiffs had failed to correct "said deficiencies"; that plaintiffs had breached "their contract," that defendant's deposit of $1,000 should be returned, the contract declared void, and defendant discharged. For a "Counter Claim and Cross Petition" defendant alleged that plaintiffs had failed to deliver merchantable title within thirty days or within a reasonable time thereafter "as plaintiffs had contracted to do," and that he had suffered damage; that he had, "in the presence of plaintiffs' agents * *," entered into a contract to "lease and sell" the property but had been unable to perform; wherefore, defendant prayed judgment against plaintiffs for $25,000 and his costs.

In a reply to the counterclaim, plaintiffs denied all its allegations and asserted that it failed to state a cause of action upon which relief could be granted.

The case was tried by the court as in equity. It was shown that a preliminary title insurance commitment, issued on May 16, 1961, to the interested *real estate agent or*

*broker,* disclosed that a strip 25 feet wide along one side of the land had been deeded to the county for road purposes, whereas only five feet was intended. Eventually this error was corrected by an ordinance of the City of Belton vacating the excess 20 feet, but not until the latter part of August, 1961. In the meantime, an extension of the option had been granted and defendant had made a deposit of $29,000 with the Title Company on or about June 12. The principal issues tried were whether or not the acts of defendant constituted an acceptance of the option so as to create a binding contract, and, if so, which party had breached it; also, if plaintiffs had breached the contract, whether defendant had suffered damages. In the view we take of the case it will be unnecessary to develop all these matters.

In the decree entered on March 11, 1963, the trial court found the issues in favor of plaintiffs and against the defendant, found that *"the plaintiff(s) is entitled to a decree of specific performance as prayed"* with respect to the real estate specifically described in the decree; and thereupon the Court ordered and decreed: 1. That plaintiff(s) have judgment for $64,295 with interest from the date of judgment and have execution therefor; 2. that upon full satisfaction of the judgment, title to the real estate so described *"be and it is hereby vested in defendant to the same extent as if plaintiff(s) had executed, acknowledged and delivered to defendant a warranty deed conveying the said real estate to the defendant"*; 3. that defendant might satisfy the judgment by paying the sum of $48,620 in cash and executing and delivering a note for $15,000 payable on June 14, 1963, with interest from June 14, 1962, secured by a deed of trust on the real estate; 4. that defendant should recover nothing on his counterclaim and cross petition; 5. that defendant pay the costs.

After his motion for a new trial was overruled, defendant appealed.

■ Appellant has raised, first, the question of the trial court's jurisdiction over the subject matter, the suit being in Jackson County and the land being situated in Cass County. Defendant's counsel objected to the introduction of evidence on this ground, and the question was preserved in the motion for new trial. Our Rule 55.43, V.A.M.R., provides that such a defense is not waived by a failure to plead it, and it is very generally considered that the defense of jurisdiction over the subject matter may not be waived. We proceed to consider this question.

■ Section 508.030, RSMo 1959, V.A.M.S. is as follows: "Suits for the possession of real estate, or whereby the title thereto may be affected, or for the enforcement of the lien of any special tax bill thereon, shall be brought in the county where such real estate, or some part thereof, is situated." Although the section appears among our venue statutes it has definitely been held that its provisions are mandatory and cannot be waived. We so held very recently in March v. Gerstenschlager, Mo., 322 S.W.2d 743; see also: Kansas City v. Cain, Mo.App., 319 S.W.2d 266; Stoops v. Stoops, 363 Mo. 1075, 256 S.W.2d 799; Howell v. Reynolds, Mo., 249 S.W.2d 381; State ex rel. Minihan v. Aronson, 350 Mo. 309, 165 S.W.2d 404. The question which ordinarily arises in cases where the jurisdiction is thus questioned is: will (or does) the judgment directly affect or operate directly upon the title to real estate so as to involve title, or is the suit one primarily involving personal jurisdiction and only collaterally affecting the title to real estate?

In sundry specific performance cases we have held that title to real estate was involved within the meaning of Article 5, § 3 of our Constitution which fixes the jurisdiction of this Court. Barr v. Snyder, Mo., 294 S.W.2d 4; Beets v. Tyler, 365 Mo. 895, 290 S.W.2d 76; Domyan v. Dornin, Mo., 356 S.W.2d 70. The pertinent provision of the Constitution is: "involving * * * the title to real estate * * *." The statutory provision is: "[s]uits for the posses-

sion of real estate, or whereby the title thereto may be affected * * *."

It was held long ago in Ensworth v. Holly, 33 Mo. 370, that the Court of Common Pleas of Buchanan County had no jurisdiction in a suit for the specific performance of a contract for the sale of land located in Gentry and Holt Counties. This Court quoted the then statute which provided that: "Suits concerning real estate, or whereby the same may be affected, shall be brought in the county within which such real estate is situate"; it then said: "Surely this was a suit which concerned or affected real estate. Its only object was the legal title to the lands in controversy."

In Castleman v. Castleman, 184 Mo. 432, 83 S.W. 757, suit was filed in Cooper County to set aside two deeds; the land was located there and summons to defendant was issued to the City of St. Louis. In considering an objection to the jurisdiction, the Court said, 83 S.W. loc. cit. 758: "Appellant is correct in his general proposition that a court of equity acts in personam. And, since the suit is personal in its character, it must seek the person to be affected in the county of his residence, regardless of where the thing in controversy may be. State ex rel. [Delmar Jockey Club] v. Zachritz, 166 Mo. [307], 313, 65 S.W. 999, 89 Am.St.Rep. 711. But our statute has ingrafted one exception to that rule. Section 564, Rev.St. 1899: 'Suits for the possession of real estate, or whereby the title thereto may be affected, shall be brought in the county within which such real estate, or some part thereof, is situate.' Title to real estate is directly affected in this suit. By the decree appealed from, the appellant is divested of title, and the plaintiff invested with the same. Keyte v. Plemmons, 28 Mo. 104; Ensworth v. Holly, 33 Mo. 370; Hannibal, etc., Ry. [Co.] v. Mahoney, 42 Mo. 467. Since the law requires the suit to be brought in the county in which the land lies, it follows that the summons may be sent to any county in the state where the defendant re-

sides or may be found." See also, generally, Brown v. Woody, Adm., 64 Mo. 547.

In Falder v. Dreckshage, Mo.App., 227 S.W. 929, a suit to enforce the specific performance of a contract for the sale of land located in Colorado, the Court said, loc. cit. 934: "Plaintiff doubtless proceeded upon the general doctrine that courts of equity act in personam; and that since the court had jurisdiction over the person of the defendants, it had jurisdiction to compel them to specifically perform the terms of the contract in suit, should the proof show that plaintiff was entitled to such relief. But a statute of this state is to be reckoned with in this connection, viz., section 1753, Rev.Stat.1909 (section 1179, Rev. Stat.1919), which provides that—

" 'Suits for the possession of real estate, or whereby the title thereto may be affected, shall be brought in the county within which such real estate, or some part thereof, is situated.'

"And in an early case the Supreme Court held that a suit for the specific performance of a contract for the sale of real estate must be brought in the county in which the land is situated. Ensworth v. Holly, 33 Mo. 370. And in this connection, see Castleman v. Castleman, 184 Mo. 432, 83 S.W. 757; State ex rel. [Hunt] v. Grimm, 243 Mo. 667, 148 S.W. 868." The Court then quoted from 25 R.C.L. 324, § 141, a statement that at times an equity court may decree specific performance of land located in another county or state, acting strictly in personam, notwithstanding the existence of a local venue statute; but the Court then made the following pertinent comment: "It seems that our Supreme Court has not taken this view as to the effect of our statute, supra." See, also, State ex rel. Hunt v. Grimm, 243 Mo. 667, 148 S.W. 868, in which the Court reaffirmed the Missouri requirement of local venue in a suit for the cancellation of a deed, and approved the case of Castleman v. Castleman, supra.

In State ex rel. Gavin v. Muench, 225 Mo. 210, 124 S.W. 1124, it was held that title to real estate was involved in a suit to enjoin the obstruction of one-half of an unopened street, defendant claiming title thereto; and the courts of the City of St. Louis were denied jurisdiction, since the land lay in St. Louis County. There also the Court, discussing at some length the extent of equity's jurisdiction in personam, held that our statute (a predecessor of § 508.030) constituted an exception to that general rule of equity jurisdiction in those cases where title to real estate was the subject of the controversy and where the title would be directly affected.

In Galloway v. Galloway, Mo., 169 S.W. 2d 883, the original suit was one in partition filed in the county where the land was situated. After a change of venue the plaintiffs were permitted to add a count seeking the cancellation of a deed, and the objection of a lack of jurisdiction over the subject matter was then made. The value of this decision in the present case is that, while the Court held that the jurisdiction on the transfer was adequate, it cited and expressly approved the cases of Castleman, Brown and Ensworth, cited supra, saying that: "There can be no doubt of the correctness of decision of these cases." (169 S.W.2d loc. cit. 887.)

We note here that in the following cases jurisdiction was held to lie exclusively in the court of the county where the land was situated: March v. Gerstenschlager, supra (suit to declare a trust in land which had been conveyed); Howell v. Reynolds, Mo., 249 S.W.2d 381 (cancellation of a deed of trust for fraud); Stoops v. Stoops, 363 Mo. 1075, 256 S.W.2d 799 (suits to set aside deeds); Marston v. Catterlin, 290 Mo. 185, 234 S.W. 816 (suit seeking conveyance of land in another county). From a jurisdictional standpoint, there would seem to be little difference between a suit to declare a trust in land, a suit to cancel a deed, and a suit for specific performance of a contract to convey real estate.

Arguing that the Court had jurisdiction, plaintiffs say that this suit is not one affecting title to real estate, but merely one to "require the defendant, as purchaser of certain real estate, to pay the purchase price * * *"; also, that the judgment is a money judgment, and that the issue tried was that of "compliance or noncompliance with a written contract." More of that later. Proceeding, counsel cite, as illustrating the propriety of the jurisdiction here: State ex rel. Brinkman v. McElhinney, Mo., 216 S.W. 521; State ex rel. Maxwell Inv. Co. v. Huck, Mo., 240 S.W. 236; Sanders v. Savage, 234 Mo.App. 9, 129 S.W.2d 1061; Hewitt v. Price, 204 Mo. 31, 102 S.W. 647, 120 Am.St.Rep. 681; State ex rel. South Missouri Pine Lumber Co. v. Dearing, 180 Mo. 53, 79 S.W. 454; and, indirectly, Robinson v. Field, 342 Mo. 778, 117 S.W.2d 308. We discuss these briefly. In McElhinney it was held that the suit was essentially one for an accounting and not for the declaration of a constructive trust; so that, an adjudication of the interests of the parties in land which had been held as tenants in common was merely a part of the accounting. In Huck, the essential claim was that a note secured by deed of trust had been fully paid, and that it should be cancelled, along with the deed of trust which secured it. That, at most, was a suit for an accounting and, as the Court said, it did not even *remotely* involve title to real estate, since the validity of the deed of trust was in nowise questioned. The Savage case is so far removed on its facts that it does not merit discussion. Dearing, supra, was a suit by a corporation against its "promoters," alleging that an excessive price had been charged for the corporate real estate, the purchase being secured by deed of trust; the plaintiffs sought an accounting, damages, and the cancellation of the notes. The Court held that, while the controversies grew out of the sale of lands situated in other counties, the suit was one strictly in personam; also, that a mere prayer for the cancellation of the notes and to enjoin a foreclosure did not, per se,

affect the title to real estate. The Court recognized that our statute (now § 508.030) does apply in those cases where "title to land is the subject of the controversy, and in which the judgment will operate directly upon the title * * *." The last of the cases mentioned above is Robinson v. Field, 342 Mo. 778, 117 S.W.2d 308; concerning that case, the Court said in March v. Gerstenschlager, at 322 S.W.2d loc. cit. 744: "In the Robinson case the question of title was essentially eliminated as a controverted issue and the case was converted into a personal action for an accounting." We note here that the case of Rice v. Griffith, 349 Mo. 373, 161 S.W.2d 220, should no longer be considered as an authority to the effect that § 508.030 announces a rule of venue which may be waived, in so far as a pending case may directly involve the title to real estate. The facts of that case may distinguish it. March, supra.

This rather laborious review of the authorities has probably been just as tiresome to the writer of this opinion as it will be to its readers. However, we have sought thereby to glean some rule of action for future guidance. It is entirely possible that not all of the cases may be reconciled.

■ In a personal action, such as one for an accounting or to declare notes paid, the pleadings and issues may be so developed as to properly require an equity court to enter a judgment collaterally affecting real estate in another county, in order to determine and adjudicate fully the rights of the parties. Howell v. Reynolds, Mo., 249 S.W.2d 381, 384. In any action which has for its primary purpose and object a judgment directly affecting the title to real estate (or in which the judgment does so), then § 508.030 is applicable, and the suit must be filed in the county where the land is situated. As already illustrated, this latter class of actions includes suits to declare trusts in realty, to cancel deeds to realty, to contest wills devising realty, to impose easements on realty, and to en-

force specific performance of contracts to convey realty. Somewhat loose language has occasionally been used in the cases with reference to the broad powers of equity to act in personam. See, for instance, the concluding dicta in Olney v. Eaton, 66 Mo. 563, loc. cit. 567. We have previously held that § 508.030 creates an exception to those broad powers in cases where the statute is properly applicable, and we reaffirm that ruling now.

■ The remaining question is whether this suit is actually one directly affecting the title to real estate. It was particularly filed as a suit for specific performance; it was tried largely on the issue of *who* had breached the alleged contract, and thus, whether the plaintiffs had the right to specific performance; the Court found the issues for plaintiff(s) and specifically found that "plaintiff(s) is (are) entitled to a Decree of specific performance as prayed in plaintiff's Petition, with respect to the following described real estate, to wit * *." (Here the land was described.) Thereupon the Court ordered (1) a judgment in the sum of $64,295 with interest; (2) that, upon satisfaction of the judgment, *title to the real estate "be and it is vested in defendant to the same extent as if plaintiff(s) had executed, acknowledged and delivered to defendant a Warranty Deed"* conveying it; (3) that defendant might satisfy the judgment by paying $48,620 in cash and the balance by note and deed of trust; (4) that defendant recover nothing on his counterclaim; (5) costs taxed to defendant; and (6) that the *Court retained jurisdiction* to carry out its orders.

It is perfectly obvious that this is not an ordinary money judgment. In any specific performance decree there must be an order for payment; in fact, it was said long ago that the Court should find the amount due and "upon the payment of the same into Court for the plaintiff" award a decree for the title. Webb v. Toms, 86 Mo. 591. Here the Court merely elected to enter the order for payment in the form of a money judg-

ment, but, upon payment of the required sum, title to the real estate was made to vest automatically in the defendant without the necessity of a deed. This judgment is in substantial compliance with § 511.280, which provides that: " * * * where judgment is given for the conveyance of real estate * * * the court may, by such judgment, pass the title of such property, without any act to be done on the part of the defendant." The present judgment, with an endorsement of satisfaction, could be recorded as a transfer of the title. It is difficult to see how a judgment might more directly affect title. If defendant pays the judgment, the title vests in him. If he does not pay, execution will be issued for $64,295, with interest and costs. In our view this can hardly be considered as providing a voluntary alternative to the transfer of title; if it be such, it is nevertheless so coercive as to amount to an enforcement of the performance. State ex rel. Place v. Bland, 353 Mo. 639, 183 S.W. 2d 878. In that case the Court said in part, 183 S.W.2d loc. cit. 884: "Both alternatives in the trial court's decree were based on the theory that relator was legally obligated by his contract to purchase the land. He resisted both alternatives and still does here. Since the decree ordered specific performance of his contract to purchase the land from respondent, it cannot be denied that title was that far involved. And while the decree was expressed to operate contingently, yet if the alternative was (as it might be) so onerous as to be coercive, in practical effect it amounted to enforcing performance. * * * We think these decisions and sound reason show that title is involved where it is taken from one and vested in another even subject to a contingency." In the present case the Court has retained jurisdiction for the purpose of insuring that its orders be complied with. We do not know whether this particular form of judgment was devised by counsel or by the Court, but to permit it to be considered as a mere personal judgment, as plaintiffs suggest, would simply be an *evasion* of its true nature. Plaintiffs

sought a decree of specific performance and this judgment is, in fact and in law, a decree of specific performance.

The trial court had no jurisdiction of the subject matter. The judgment is reversed and the cause remanded with the direction that the case be dismissed without prejudice.

STORCKMAN, P. J., and HUNTER, Special Judge, concur.

LEEDY, J., not sitting.