John BLADDICK and Marguerite Bladdick,
Appellants,

v.

OZARK ORE COMPANY, a Delaware
Corporation, Respondent.

No. 50147.

Supreme Court of Missouri,
Division No. 1.

July 13, 1964.

Motion for Rehearing or to Transfer to
Court En Banc Denied
Sept. 14, 1964.

Arthur H. Slonim, Clayton, Sidney L.
James, St. Louis, for appellants John Blad-
dick and Marguerite Bladdick.

Biggs, Hensley, Curtis & Biggs, Davis Biggs, William C. Dale, Jr., St. Louis, Edgar & Edgar, William R. Edgar, Jr., Ironton, for respondent Ozark Ore Co., a Corporation.

HOUSER, Commissioner.

This is a suit for $7,500 actual and $50,-000 punitive damages brought by John Bladdick and wife against Ozark Ore Company for interfering with plaintiffs' easement for the use of a roadway over defendant's lands. A trial jury returned a verdict for defendant. Plaintiff has appealed.

In 1941 the Bladdicks bought the surface rights to a tract of 112.5 acres for $500. The nearest public road was about a mile from the property. Defendant's lands surround the Bladdick property on three sides. An old 20-foot roadway running across defendant's lands connected the Bladdick property with the public highway, hereinafter referred to as "the original connecting roadway." John Bladdick knew that the original connecting roadway had been used by another farmer "in back of" Bladdick, apparently by acquiescence of defendant, and the Bladdicks began to use it for ingress and egress, without asking defendant for permission. No one told the Bladdicks that they could not come and go over the roadway. The Bladdicks improved their property, moved onto the farm in 1943, and continued to live there until 1956. In November, 1944 defendant's attorney wrote John Bladdick a letter expressing defendant's desire to acquire a 50-foot right of way for road purposes over Bladdicks' 112.5 acre tract and enclosed a plat showing the exact location of the desired roadway. The attorney pointed out that Bladdick's only access to his land was by traveling over defendant's lands from the public highway. In return for the desired right of way over the Bladdick tract defendant proposed to give Bladdick, his heirs and assigns, the right to use the 50 foot roadway over his own land, and in addition thereto "the right to use the present established road on [the ore company's] lands from the public highway, near the old office building to the point where you cross the railroad to come onto your land." It was suggested that the execution of the following proposed agreement (omitting attestation clause and signatures) would be to the mutual advantage of the parties:

"RIGHT OF WAY AGREEMENT

"WHEREAS, John Bladdick and Marguerite Bladdick, his wife, of Granite City, Illinois, are the owners of a certain tract of 112½ acres of land lying in the Southwest quarter of Section 30 Township 35 North, Range 4 East, in St. Francois County, Missouri, lying on the West side of the Missouri Pacific Railroad; and

"WHEREAS, Ozark Ore Company, a Delaware corporation, owns lands adjoining the tract belonging to John Bladdick and wife, immediately West thereof, immediately North thereof and immediately East thereof; and

"WHEREAS, Ozark Ore Company is desirous of obtaining a right of way for road purposes across the lands of the said John Bladdick and wife; and

"WHEREAS, the said John Bladdick and wife are desirous of obtaining a right of way for road purposes across the lands of Ozark Ore Company, lying East of the lands belonging to the said John Bladdick and wife;

"NOW, THEREFORE, for their mutual benefit, the parties hereto agree as follows:

"The said John Bladdick and Marguerite Bladdick, his wife, do by these presents Grant, Bargain and Sell, Convey and Confirm, unto Ozark Ore Company, its successors and assigns, the following described tract of land, namely: [here follows a metes and bounds description of a tract of land 721 feet long and 50 feet wide, containing 0.82 acres].

"The conveyance of the strip of land last described is made for road purposes and it is understood as a part of the con-

sideration for this conveyance that Ozark Ore Company, its successors and assigns, shall at all times, at their own expense, maintain and repair said road way.

"Ozark Ore Company, a corporation aforesaid, does by these presents Grant unto the said John Bladdick and Marguerite Bladdick, his wife, their heirs and assigns, the unrestricted right to use of said roadway and the right of ingress and egress over, across and upon other lands of Ozark Ore Company lying East of the lands belonging to the said John Bladdick and wife, to enable them, their heirs and assigns, to obtain access to the public highway at Iron Mountain, Missouri; it being understood and agreed that the said John Bladdick and wife, their heirs and assigns, shall restrict their use of said privilege to the established roadway across the lands of Ozark Ore Company connecting the roadway herein conveyed with the public highway at Iron Mountain, Missouri."

The Bladdicks executed several copies of the foregoing agreement, as did defendant, and it was filed for record in the office of the recorder of deeds. At the time of the execution of the instrument John Bladdick knew that defendant was conducting open pit mining operations on its lands within 200 yards of the connecting roadway, and that ore was being hauled out of the ground. These mining operations continued from 1944 to 1956. During that 13-year period the Bladdicks continued to use the original connecting roadway. In 1941 it was the only established roadway that crossed defendant's lands and connected with Bladdick's tract; the only means the Bladdicks had to get to and from the public highway. Defendant also used this roadway, to get to their pumps. In the fall of 1956 the Bladdicks moved away from the property, returning every other weekend until the spring of 1957 when the house located on the tract burned down. Thereafter from 1957 to 1959 they returned to the property only twice a year. Defendant maintained the original connecting road-

way at its own expense. Bladdick was not asked to contribute to its upkeep and did not do so. Defendant made a slight change or jog in the original connecting roadway in 1954 and again in 1957. These minor deviations from the route were not objected to by Bladdick, since "they had it well fixed."

In the fall of 1959 defendant desired to mine an ore body located under the original connecting roadway at a point about ¾ of a mile from the Bladdick tract. To do this mining it was necessary to destroy the road a length of about 400 feet and remove the rock, dirt and clay thereunder. Defendant's superintendent was informed by its chief clerk of the existence of the right of way agreement. The superintendent knew that the Bladdicks owned the tract to which the original connecting roadway gave them access, and knew that they had been using this roadway. After reading the agreement the superintendent caused the original connecting roadway to be stripped away, resulting in a hole or crater 20 or 30 feet deep and approximately 100 yards square, thereby rendering permanently impassable that part of the original connecting roadway. This action was taken without any notice or warning to the Bladdicks of intention to remove a portion of the road and to interrupt the use of the original connecting roadway at that point, or to relocate a segment of that roadway, and without gaining their permission or consent to make the change. Defendant's superintendent did not consider it necessary to notify the Bladdicks of the intended change. The change has prevented the Bladdicks from using the segment of the original connecting roadway nearest the public highway. The portion of the original connecting roadway nearest the Bladdick tract (the first three quarters of the road as one leaves the Bladdick property and proceeds toward the public highway) follows the same course and is the same road that existed there at the time the Bladdicks bought their tract, but since the change a traveler leaving the highway, in-

tending to use the original connecting roadway, is confronted with a locked gate.

Before the above described section of the original connecting roadway was destroyed defendant built a new segment of road from the point of the excavated area to the public highway, a distance of 1,000 feet or more, to be used in place of the segment destroyed by the mining operation. Defendant's superintendent testified, "We re-established part of the road prior to the time of the removal of the old road." The new segment terminated at a point entering the public highway several hundred feet distant from the point at which the original connecting roadway had emerged from defendant's lands. From the Bladdick tract to the public highway the length of the original connecting roadway was 4800 feet. The route as relocated is 4600 feet in length. There was no time during which a connecting roadway could not be used either on its original or present course. When the new segment was completed for use defendant's superintendent left instructions that the Bladdicks be directed and assisted in its use. No other notice of relocation was given to them. On their first trip to the property after the relocation the Bladdicks encountered a gate across the original connecting road, right at the public highway, bearing the sign "Private Property No Trespassing." The gate was locked with a padlock and chain. On inquiry they were directed over the new portion of the roadway. It was raining. The Bladdick car slipped off the new road, got stuck at a point some 200 feet off the new segment of the roadway, and had to be pulled out by a truck. Thereafter the Bladdicks used the new segment two, three or four times but with difficulty, for the assigned reasons that it is not as straight or solid as formerly, and that John Bladdick has difficulty at one fork in the road which opens up three routes, for he cannot remember which of the three to take to get to his property. There is "nothing to go down there for" since the house burned. Bladdick testified that he had not sought permission to use

the roadway along its new course; that defendant never said anything to him about needing permission to use the roadway. He testified that he had no right to go over it; "no business on their right of way." He considered himself a trespasser, stating that the few times he used the new segment it was "the only thing [he] could do" but that he had "no right at all to go on the other man's land." The original connecting roadway was a hard surface, gravel-covered, with a pressed rock foundation, "pretty well kept up," and "pretty well established." Bladdick introduced evidence that the new segment was a rough road, with big gullies and deep ruts, and lacked a solid foundation, and indicated that the old and new roads were not the same; that the new segment was not as good a road as the old road; that it was not as straight, and had more curves; and "you got to go up a steep hill in order to get out and if it is wet and bad, or slippery in the winter, you will never make it." According to defendant's evidence, both the original and the new segment were about 20 feet wide, with pressed rock foundations, surfaced with gravel, and were essentially the same.

■ Appellants' first point will be resolved by determining the nature of the interest in defendant's lands transferred to the Bladdicks by the right of way agreement. Were they granted a right of way easement over the particular route of the original connecting roadway and no other, or a right of ingress and egress over defendant's lands generally for the purpose of access, limited to whatever roadway might be established by defendant and in use at the time of the exercise of the privilege and subject to alteration at any time at the election of the grantor, but not amounting to an easement or other interest in a particular roadway?

"All that is necessary to create an easement of the kind under consideration 'is a clear manifestation of the intention of the person who is the source of title to subject one parcel of land to a restriction in its

use for the benefit of another, * * * and sufficient language to make that restriction perpetual.'" Whitelaw v. Rodney, 212 Mo. 540, 111 S.W. 560, 562.

We have concluded that the writing created in the Bladdicks an easement for right of way purposes the exact nature of which is a privilege of user for road purposes, restricted to the route and course of the particular roadway across defendant's lands as established on November 21, 1944. This follows from a general consideration of the right of way agreement as a whole; a particular consideration of its preliminary recital of the reasons which impelled the parties to enter into a contract (each to obtain "a right of way for road purposes" from the other), the granting clause, and the restriction of the Bladdicks' use of the privilege "to the established roadway across the lands of Ozark Ore Company connecting the roadway herein conveyed [and therefore Bladdicks' farm] with the public highway * * *."

The words the parties used are certain and definite and clearly manifest an intention to convey the above described interest in real estate to grantees, their heirs and assigns, and to perpetually burden grantor's lands therewith. Rosenbloom v. Grossman, Mo.Sup., 351 S.W.2d 735, 738, 739; Whitelaw v. Rodney, supra. Under the facts of this case we consider that the purpose of the granting clause was to give the owners of the landlocked farm, their heirs and assigns, a right of ingress and egress over an existing, established private road with a definite course and route between the farm and the public highway. The roadway as to which the parties were contracting was identified not only as an *established* roadway but also as *the*[1] established roadway. There could be no confusion as to which route was meant: the evidence clearly shows that there was only one road connecting the 112.5 acre farm and the public highway on November 21,

1944. The use of the words "the established roadway, [etc.]" was sufficient to describe a particular route. In Boland v. Byrne, Mo.App., 145 S.W.2d 755, where there was a grant of the "right of ingress and egress at all times over road as now traveled" it was considered that "the road now traveled" would "necessarily be a fixed monument." So in this case, "the established roadway" was a fixed monument. It referred to the roadway as then located—the present, existing roadway already established and then in use. In Franck Bros. v. Rose, Mo.Sup., 301 S.W.2d 806, the following language was used to describe a roadway: " * * * a roadway, 15 feet wide [through described land] where now located, connecting with Shepard County Road." In considering the granting clause this Court said, l. c. 811: "The obvious purpose of the clause in question was to give to the owner of Lot 3 a right of ingress and egress, over an existing private road, from said Lot 3 to Shepard County Road." Much less definite granting clauses than the instant one have been held to refer to a presently existing roadway. Thus, in Bolomey v. Houchins, Mo.App., 227 S.W.2d 752, the grantor-testator used this language: "the right of way through said tract of land." In spite of the indefiniteness of this description the St. Louis Court of Appeals considered that he "[u]ndoubtedly * * * intended to refer to a roadway *as already established and in use at the time of the execution of his will,* * * *." 227 S.W.2d, l. c. 753. (Our emphasis.) In the instant case there is little or no room for uncertainty in the language used to locate the route of the roadway. The intention to refer to a specific route, i. e., the only roadway already established and in use at the time of the execution of the right of way agreement, is clear enough.

■Defendant, however, seeks to differentiate between the language describing

---

1. Note the use of the definite article "the." Websters New International Dictionary, Second Edition, Unabridged, p. 2617.

the rights the Bladdicks were to have in the roadway crossing their own land and in the roadway across defendant's lands, contending that while the former grants an unrestricted easement right, the latter grants no easement but "only furnishes a right of ingress and egress across defendant's lands to the public highway." There is no substantial difference between the grant of the unrestricted right to use a strip of land described by metes and bounds "for a roadway," and the right of ingress and egress over grantor's lands for access purposes between a farm and a public highway where the use of the privilege is restricted to a certain established roadway located on grantor's lands. The differing method of expression perhaps may be accounted for on the ground that the latter describes a way to and from a landlocked tract, but the net result of the two descriptions is the same. The uses and purposes are the same; the grantees in both instances enjoy unrestricted right of passage over a given roadway. The intention to make the right perpetual is found in both instances by the use of the word "heirs." Stotzenberger v. Perkins, 332 Mo. 391, 58 S.W.2d 983, 986, 987.

Defendant seizes upon the fact that in one instance there was a description by metes and bounds but not in the other. We attach no special significance to this in determining the nature of the right granted. A reason for this difference may lie in the fact that the original connecting roadway was already established and needed no center line or other surveyor's description, while the easement over the Bladdicks' land was new and could more conveniently be established and described in some formal manner, as by metes and bounds.

■ Defendant reads into the last clause of the right of way agreement, beginning with the words "it being understood," a limitation on the privilege granted, contending that these words lessen the privilege and indicate an intention that no easement be intended. We disagree. The clause restricts the rights of ingress and egress over defendant's lands to a particular roadway existing at the time of the execution of the easement, but does not limit the Bladdicks' right to cross defendant's lands to whatever route the defendant in the future may establish or whatever route may be in use in the future. In the light of developments and in retrospect it would have been to defendant's advantage to provide for such flexibility in the routing, but the inescapable fact is that the instrument contains no such provision, either expressly or by necessary implication. If defendant had intended to reserve the right to alter the route in the future in order to accommodate the needs and requirements of its mining operations we have no doubt that it would have written such a reservation into the agreement, in unambiguous language. We cannot rewrite the contract for the parties, but must take the language as we find it. If the language employed be regarded as ambiguous it is to be construed against defendant, since defendant's attorney drew the instrument. Any lingering doubt that it was defendant's intention to contract with reference to the original connecting roadway and not with reference to a flexible route is removed when we consider defendant's attorney's reference to the roadway, in his letter of transmittal to John Bladdick as "the *present* established road." (Emphasis ours.)

■ If the specific route had not been definitely located by the description in the right of way agreement the situation nevertheless would have been saved for the Bladdicks, under the rule that where an easement in land is created in general terms without giving its definite location and description, a subsequent selection of the course over which the right is to be exercised may be inferred within the boundaries of the land over which the right is granted by proof of the use of a particular way on the part of the grantee or owner of the dominant estate along with the acquiescence of the grantor or owner of the servient estate. Bolomey v. Houchins, su-

pra, 227 S.W.2d, 1. c. 755; 17A Am.Jur. Easements, § 102. For 13 years the parties construed the grant to mean the route of the original connecting roadway, by the Bladdicks' continuous use of that specific route and defendant's acquiescence therein.

Defendant maintains, however, that nothing in the writing prevents it from relocating portions of the roadway as long as there is no interference with the Bladdicks' use of the roadway as relocated and no interference with their ingress and egress. We do not agree. The writing gives the Bladdicks a right of way over "the established roadway," not over "the roadway as now established or as may be hereafter established by defendant." The Bladdicks had the right to use the entire route of the original connecting roadway without interference, obstruction or disruption of any part of it. Nothing in the right of way agreement reserved to defendant the right to change the route in the future as it might desire, to accommodate the needs and requirements of its mining operations. "As a general rule, in the absence of statutes to the contrary, the location of an easement cannot be changed by either party without the other's consent, after it has been once established either by the express terms of the grant or by the acts of the parties, except under the authority of an express or implied grant or reservation to this effect." 28 C.J.S. Easements § 84; 17A Am.Jur. Easements, §§ 103, 134. Defendant had no right to destroy a 400-foot section and permanently take out of use 1000 feet of the original connecting roadway, thereby depriving the grantees of easement rights reserved to them in writing, or to arbitrarily reroute the roadway to suit its own purposes, without first obtaining the consent of the grantees. Defendant's conduct in so doing, with full knowledge of the rights of the grantees, and of their long continued use along the original route, violated plaintiffs' rights. The fact that an alternate route was provided, while doubtless a strongly mitigating circumstance on the question of damages, is not sufficient to discharge the grantor from liability, even though the alternate route may have been equal to the original route in utility and quality. " * * [A] definite location binds the grantor so that he has no right either to hinder the grantee in the exercise of his right or to compel him to accept another location, although the latter location may be equally convenient with the right or privilege originally granted." 17A Am.Jur. Easements, § 103.

Plaintiffs' case was made in all substantial particulars by defendant's admissions, but defendant did not make a submissible defense. The circuit court erred in submitting this case to the jury on the question of liability and in entering judgment for defendant upon return of the jury's verdict. On the same pleadings and evidence on a new trial the court on motion of the plaintiffs should direct a verdict for plaintiffs on the issue of liability.

These considerations require a reversal of the judgment and make it a useless exercise to analyze in detail Instructions Nos. 4 and 5, given at the request of defendant. Obviously it was error to give these instructions in view of the conclusions we have reached on the issue of liability.

Judgment is reversed and the cause is remanded for a new trial.

WELBORN, C., concurs.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.

ON MOTION FOR REHEARING OR TO TRANSFER TO COURT EN BANC

PER CURIAM.

This opinion does not conflict with Bunch v. Wheeler, 210 Mo. 622, 109 S.W. 654, as

charged. In Bunch a provision in a deed of conveyance reserved "the right of passway near the original road through said land for a passway." The original road ran through a strip of land varying in width from 100 to 300 feet. At first plaintiff, owner of the right reserved, used the original road. Later the new owner of the land closed that passway and allowed plaintiff to use another route. Plaintiff thereupon traveled through the strip "just anywhere." A subsequent purchaser refused to permit plaintiff to use the land as a passway. Plaintiff had his surveyor make a metes and bounds survey of a road 20 feet wide on what was pointed out to the surveyor as "the original road," and brought suit for a mandatory injunction. The circuit court construed the reservation as the grant of a right of way over the specific strip of land 20 feet wide and 21.76 chains in length. On appeal this court held the reservation not susceptible to the construction that the specific twenty feet, particularly described, was reserved from the grant; construed the reservation as a grant of a right to pass over the land along a route near to the then well-known and long existing road; held that the grant was not void for uncertainty and that the grant was sufficiently definite; that the right of way or right to pass over the land was to be near the original road which was a fixed monument or well-defined course. The decree was reversed and the circuit court was directed to require the owner of the servient estate to erect a gate at each terminus of the right of way and to indicate to plaintiff the location of the passway near the line of the old road. The two cases differ in important particulars. The reservation in Bunch was general. The reservation in Bladdick is particular and specific (a right of ingress and egress and user restricted to a designated, existing, established roadway). Plaintiff in Bunch acquiesced in the closing of the road which plaintiff first used as a passway. There was no such acquiescence in Bladdick. The user in Bunch, following the closing of the

original road, was not confined to a particular route; plaintiff traveled "just anywhere" through the strip. There was no such general user in Bladdick; Bladdicks' use was confined to the well-defined course of the established roadway. The parties in Bunch did not construe the reservation as a grant of a particular route, whereas the parties in Bladdick for 13 years construed the grant to mean the route of the original connecting roadway. The two cases are to be distinguished on their differing factual situations and are not in direct conflict, as claimed.

■ Respondent makes the further charge that the Circuit Court of the City of St. Louis, to which the cause is remanded, will not have jurisdiction to hear the cause by reason of § 508.030, V.A.M.S., which provides that suits whereby the title to real estate may be affected shall be brought in the county where such real estate is situated. The real estate lies in St. Francois County. The question which ordinarily arises in cases where jurisdiction is thus questioned is whether the judgment will directly affect or operate directly upon the title to real estate so as to involve title, or whether the suit is one primarily involving personal jurisdiction and only collaterally affecting the title to real estate. This was pointed out in Sisk v. Molinaro, Mo.Sup., 376 S.W.2d 175, a specific performance case involving a contract for the purchase of land in Cass County. Following many previous decisions in cases of specific performance Sisk held that title to real estate was involved and that the Circuit Court of Jackson County lacked jurisdiction. In an effort to provide a rule of action for future guidance the writer of the opinion listed several illustrative types of suits (376 S.W.2d, 1. c. 180) having for their primary purpose and object a judgment directly affecting the title to real estate, including suits "to impose easements on realty." The opinion recognized that in a *personal* action the pleadings and issues may be so developed as to properly require the en-

try of a judgment collaterally affecting real estate in another county, in order to determine and adjudicate fully the rights of the parties. Turning to the instant petition, it is clear that its primary object and purpose is not to obtain a judgment, directly affecting the title to real estate, or to "impose" an easement on realty. Nor will judgment take title out of one party and vest it in another, The judgment, whichever party prevails, will have no effect on the title to the ore company's property. This is not a proceeding in the nature of a proceeding in rem affecting land, The real estate is not the principal matter in issue. The object of this petition is to recover actual and punitive damages for an alleged wrongful, unlawful and malicious destruction, removal and extinguishment of a roadway over which plaintiff claims a right of way, by the acts of defendant in ripping, tearing, gouging, scooping and undercutting the roadway so as to completely and permanently demolish and eliminate the roadway for a distance of several hundred feet. It is a personal action for damages asking for no relief other than an ordinary money judgment. The issue is whether respondent had the right to destroy the original connecting roadway and thus to totally and permanently extinguish access to appellants' property by means of a roadway over which appellants claim a right of way, and if not, the extent to which appellants have sustained damages in terms of money. As in the case of a suit for trespass, the primary object is to recover damages, not to try title to real estate. The question of title is merely incidental to the main controversy. While appellants must show their right of way over the demolished roadway in order to obtain judgment, their proof of title "is collateral, and a mere incident of the real issue," which is their right to damages. As in Hannibal & St. Joseph Railroad Company v. Mahoney, 42 Mo. 467, a suit to recover treble damages for trespass in cutting and carrying away timber from plaintiff's lands, "If the plaintiff shows title sufficient to enable him to maintain his cause of action, the judg-

ment does not operate on the real estate or affect the title thereto. The proof of title only amounts to a link in the chain, among others, of the evidence by which he supports his issue and recovers a general judgment for the wrong done him by the defendant. To come within the purview of the statute, it must be a case not merely where the title is drawn in question, but where the title is to be affected." 42 Mo., l. c. 472. Section 508.030, supra, "applies only to cases in which title to land is the subject of the controversy; and in which the judgment will operate directly upon the title, and not to those cases where the title to land may be merely a subject of collateral inquiry, or in which the judgment will only affect the title incidentally or collaterally." State ex rel. South Missouri Pine Lumber Co. v. Dearing, 180 Mo. 53, 79 S. W. 454, and cases cited l. c. 457; Hewitt v. Price, 204 Mo. 31, 102 S.W. 647. Accordingly, the Circuit Court of the City of St. Louis has jurisdiction to try this cause on remand.

The motion for rehearing or to transfer to the court en banc is overruled.