HFC INVESTMENTS, LLC, et al., Appellants,

v.

**VALLEY VIEW STATE BANK d/b/a Valley View Bank, et al., Respondents.**

Nos. WD 72962, WD 73071.

Missouri Court of Appeals, Western District.

Feb. 21, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2012.

---

John M. Duggan and Deron A. Anliker, Overland Park, KS, for appellant.

Thomas M. Martin, Kansas City, MO, for respondent.

Before VICTOR C. HOWARD, P.J., and ALOK AHUJA and KAREN KING MITCHELL, JJ.

ALOK AHUJA, Judge.

HFC Investments, LLC, and BEO5 Investments, LLC (collectively "HFC") sued Valley View State Bank and 95th Street Service Corporation (collectively "Valley View") in the Circuit Court of Jackson County, seeking declaratory relief and money damages arising out of a transaction involving real estate located in Johnson County, Kansas. Valley View moved to dismiss on the basis of *forum non conveniens,* and in reliance on § 508.030,[1] which requires that actions affecting title to real estate be brought in the county in which the property is located. The circuit court granted the motion to dismiss based solely on § 508.030. HFC appeals. We affirm.

## Factual Background

HFC entered into an agreement with Valley View in May 2009. The agreement provided for the transfer of title to real estate in Johnson County, Kansas from HFC to Valley View State Bank and its wholly owned subsidiary, 95th Street Service Corporation. The agreement also

---

1. Unless otherwise indicated, statutory citations refer to the RSMo 2000, as updated through the 2011 Cumulative Supplement.

provided HFC with an option to repurchase the property under specified circumstances. HFC alleges that Valley View wrongfully denied it the right to exercise its option. On April 14, 2010, HFC, along with BEO5 Investments, LLC (alleged to be the successor-in-interest and assignee of certain of HFC's rights under the May 2009 agreement), filed a fourteen-count petition in the Circuit Court of Jackson County naming Valley View State Bank and 95th Street Corporation as defendants. HFC's petition alleges claims for breach of contract, promissory estoppel, fraudulent inducement, negligent misrepresentation, breach of the duty of good faith and fair dealing, breach of fiduciary duty, tortious interference with contract and business expectancy, unjust enrichment, and negligent supervision. All fourteen counts center on Valley View's grant of the repurchase option to HFC, and its failure to honor the option. The petition seeks money damages, but also in two counts seeks a declaratory judgment "that the May 2009 Agreement and deeds executed as a part thereof are not binding on [HFC] and are null and void."

Valley View filed a motion to dismiss, arguing that the trial court lacked jurisdiction under § 508.030. Valley View argued in the alternative that the trial court should dismiss on the ground of *forum non conveniens,* because the property and most of the witnesses and parties were located in Kansas, and the relevant transactions occurred in Kansas.

During oral argument on Valley View's motion, HFC's counsel contended that his clients were seeking only monetary relief; counsel stated that "we're prepared to amend, if necessary," to withdraw the counts seeking declaratory relief invalidating the deeds, and to eliminate any suggestion that HFC was seeking specific performance of the repurchase option.

The trial court granted the motion to dismiss, relying exclusively on § 508.030. HFC appeals.

## Analysis

Section 508.030 provides:

Suits for the possession of real estate, or whereby the title thereto may be affected, or for the enforcement of the lien of any special tax bill thereon, shall be brought in the county where such real estate, or some part thereof, is situated.[2]

Section 508.030 applies to actions which seek to directly affect title to property; the statute does not apply where any

2. The trial court stated that it was dismissing the action because "this court has *no jurisdiction* to entertain this suit" in light of § 508.030 (emphasis added), and on appeal the parties argue the issue as one involving the circuit court's subject-matter jurisdiction. To the contrary, however, "[s]ection 508.030, although mandatory as to the place of bringing an action affecting title to real estate is, nevertheless, solely a venue statute." *Howell v. Reynolds,* 249 S.W.2d 381, 384 (Mo.1952). Issues concerning the proper venue for an action do not implicate either the subject-matter or personal jurisdiction of a trial court, and such issues are therefore not properly denominated "jurisdictional":

Jurisdiction describes the power of a court to try a case, while venue relates to the locale where the trial is to be held. A court's authority, or jurisdiction, to hear a case is based upon constitutional principles. Venue, in contrast, is determined by the applicable rule or statute. Venue assumes the existence of jurisdiction and determines, among many courts with jurisdiction, the appropriate forum for the trial. Because it involves a procedural rather than a jurisdictional question, venue is a matter that goes to process rather than substantive rights.
*State ex rel. Kansas City So. Ry. Co. v. Nixon,* 282 S.W.3d 363, 365 (Mo. banc 2009) (citing, *inter alia, J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249, 252 (Mo. banc 2009)).

effect on title would be only incidental or collateral to the relief a plaintiff seeks.

> [T]he phrase "whereby the title may be affected" in § 508.030 has been held to mean the judgment must operate directly upon the title to the real estate. In order for "title to be affected" so as to predicate venue in the county where the land is located, title to the land must be the subject of the controversy. It is not enough for the judgment to affect the title incidentally or collaterally.

*Sabatino v. LaSalle Bank, N.A.*, 96 S.W.3d 113, 116 (Mo.App. W.D.2003) (citation omitted; action claiming that debt had been satisfied did not affect title to real property, even though debt was secured by lien on real estate); *see also Mission Med. Grp., P.A. v. Filley*, 879 S.W.2d 743, 746 (Mo.App. W.D.1994).

Counts III and IV of HFC's petition seek relief which would operate directly upon the title to real estate, and therefore fall within § 508.030. Both counts allege that Valley View fraudulently induced HFC to enter into the May 2009 Agreement and execute the deeds transferring property to Valley View, and each count seeks a declaration "that the May 2009 Agreement and deeds executed as a part thereof are not binding on [HFC] and are null and void," or are "void and voidable." The actions subject to § 508.030 "include[ ] suits to declare trusts in realty, *to cancel deeds to realty*, to contest wills devising realty, to impose easements on realty, and to enforce specific performance of contracts to convey realty." *Sisk v. Molina-ro*, 376 S.W.2d 175, 180 (Mo.1964) (emphasis added). The fact that Counts III and IV seek a declaration as to the invalidity of the May 2009 Agreement, not merely of the deeds executed in connection therewith, does not alter this conclusion. *See Mercantile Trust Co. v. Anderson*, 611 S.W.2d 548, 553 (Mo.App. E.D.1981) ("Even if the suit is characterized as a suit upon a contract, which as an incident thereto, requires the delivering of a deed as a muniment of title, the result would be no different."). Moreover, the characterization of Counts III and IV is unaffected by the fact that, in the same petition, HFC asserted additional counts seeking money damages arising out of the same set of operative facts. *Skatoff v. Alfend*, 411 S.W.2d 169, 172 (Mo.1967) ("The joining of the action to set aside the fraudulent conveyance [of real estate] with the [non-real estate related] action for accounting and partnership dissolution does not permit the plaintiff to avoid the mandatory effect of § 508.030, RSMo 1959, V.A.M.S., as to the place of bringing an action affecting title to real estate.").[3]

HFC argues that the natures of its causes of action should be determined by the factual allegations of its petition, not by its prayers for relief. As HFC points out, "[g]enerally, the prayer for relief is not considered part of the petition." *City of Greenwood v. Martin Marietta Materials, Inc.*, 311 S.W.3d 258, 264 (Mo. App. W.D.2010); *see also Bowles v. All Counties Inv. Corp.*, 46 S.W.3d 636, 640

---

**3.** We also note that, in Count II, HFC specifically alleged that:

> 26. The equities support the enforcement of the agreements in that among other things [HFC] [is] prepared to perform, and there was no basis to proceed with a fraudulent scheme to sell lots to a third party.
>
> 27. [HFC] will suffer damages and an injustice will result if [Valley View]'s represen-

tations and promises are not enforced and [Valley View] [is] allowed to repudiate its representations and promises to [HFC].

These allegations would appear to support specific enforcement of the repurchase option; such relief would also implicate § 508.030. *Sisk*, 376 S.W.2d at 180–81; *Mercantile Trust Co.*, 611 S.W.2d at 553.

(Mo.App. S.D.2001).[4] There are exceptions to this general rule, however. For example, when it is unclear from the body of the petition what cause of action the plaintiff seeks to assert, courts have resolved the ambiguity by looking to the plaintiff's prayer for relief. *See, e.g., Metts v. Clark Oil & Refining Corp.,* 618 S.W.2d 698, 705 (Mo.App. E.D.1981) ("The prayer may be considered in ascertaining the type of action attempted to be set forth by the pleader."); *Sears v. Norman,* 543 S.W.2d 300, 303 (Mo.App.1976) (same); *Duvall v. Stokes,* 270 S.W.2d 419, 424 (Mo.App.1954) ("[i]f the allegations of fact are ambiguous or susceptible of two constructions, the prayer may be looked to for the purpose of ascertaining the intention of the pleader").

More significantly, this Court has in prior cases looked to the relief prayed for in order to determine the applicability of § 508.030. *See, e.g., Mission Med. Grp.,* 879 S.W.2d at 746 ("Mission is pursuing a tort claim for negligent supervision of the minor children, and is seeking only money damages. A suit for money damages alone does not involve any issue directly affecting title to real estate and will not be considered 'local' under § 508.030."); *Mercantile Trust Co.,* 611 S.W.2d at 554 (distinguishing between two counts containing similar allegations (concerning a contract to make a will) based on the relief prayed for in each count). Given that the operation of § 508.030 depends upon the nature of the relief which may ultimately be awarded in the action, we fail to see how the applicability of the statute in a specific case could be determined *without* reference to the relief for which the plaintiff prays. *See, e.g., Bladdick v. Ozark Ore Co.,* 381 S.W.2d 760, 768 (Mo.1964)

(§ 508.030 inapplicable because "*[t]he object of this petition is to recover actual and punitive damages* for an alleged wrongful, unlawful and malicious destruction, removal and extinguishment of a roadway [on defendant's property] over which plaintiff claims a right of way [by virtue of an easement]. ... *It is a personal action for damages asking for no relief other than an ordinary money judgment.*" (emphasis added)); *cf. State ex rel. Leonardi v. Sherry,* 137 S.W.3d 462, 471 (Mo. banc 2004) ("[L]abeling an action as equitable or legal in the modern sense typically bespeaks *the type of relief being sought.*" (emphasis added)).

We recognize that, in *State ex rel. Hammerstein v. Hess,* 472 S.W.2d 362 (Mo. banc 1971), which involved the application of § 508.030, the Supreme Court stated broadly that "[i]t is well established that the form of an action is determined by the substance of the petition, and that the demand for relief, or the prayer, is no part of the cause of action." *Id.* at 364. In *Hammerstein,* the plaintiffs' original petitions sought equitable relief to prevent a trustee from terminating a trust. *Id.* at 363. The plaintiffs in one of two consolidated actions later filed a "Memorandum of Amendment of Prayer of Plaintiffs' Petition," which explicitly prayed that the title to real estate held by the trust be quieted in the plaintiffs' names. *Id.* at 363–64. The Court's statements concerning the status of a petition's prayer for relief were directed at the plaintiffs' attempted amendment of the relief they sought. *Id.* at 364 ("For this reason [*i.e.,* because the prayer for relief is no part of the petition], we need not look to the amended prayer filed in the second suit, because such prayer could not have the effect of converting

---

4. Despite such broad statements, other cases observe that, "[a]lthough it is sometimes said that the prayer is no part of the petition, it is more accurate to state that the relief prayed for is not part of plaintiff's cause of action or claim for relief." *Wear v. Walker,* 800 S.W.2d 99, 102 (Mo.App. S.D.1990) (citations omitted).

plaintiff's equitable action in personam into an action affecting title to real estate within the meaning of the section relied upon." (citation and internal quotation marks omitted)). Indeed, *Hammerstein* itself looked to the prayers for relief in the original petitions to support its conclusion that "the claim asserted in both [consolidated] cases is directed solely toward the trustee and his administration of the trust," *not* specifically to a determination of title to particular trust property. *Id.* at 363.

For the foregoing reasons, the trial court did not err in concluding that Counts III and IV of HFC's petition affected the title to real estate, and were subject to dismissal under § 508.030.[5]

█ In a single paragraph of its Brief, HFC argues that, "if the relief requested in Counts III and IV was problematic . . . , the proper remedy was not to dismiss [HFC's] entire petition, but to sever the remaining counts from the Petition and dismiss without prejudice only Counts III and IV." HFC did not seek such relief below. The closest HFC came was its expression of a willingness to amend its petition to modify the relief it sought, and/or withdraw Counts III and IV. HFC's offer to amend its petition is importantly different from its current argument (that the trial court should itself have severed the claims); moreover, HFC did not actually seek leave to amend in the trial court, and does not argue on appeal that the trial court erred by failing to grant it an opportunity to do so.

Even if HFC's severance argument were properly preserved, it would not justify reversal. HFC relies on *Skatoff*, 411 S.W.2d 169, to argue that any defects in Counts III and IV should not affect the other counts of its petition. In *Skatoff*, the petition filed by two partners against their third partner sought an accounting of the partnership's affairs, in connection with its dissolution. *Id.* at 171. One of the plaintiff-partners later filed an amended petition, in which he sought, in addition to an accounting, to set aside certain transfers of real estate by the defendant-partner, on the ground that those transfers were fraudulent conveyances. *Id.* The Supreme Court held that the fraudulent conveyance claim directly affected title to real estate, and was therefore subject § 508.030. *Id.* at 172. It also held, however, that the dismissal of the fraudulent conveyance claim did not require dismissal of the accounting claim, because "[t]he claim to set aside the fraudulent conveyance was *a separate and severable action.*" *Id.* at 172 (emphasis added).

In *Skatoff*, the Supreme Court highlighted that—unlike the accounting claim—the title-related fraudulent conveyance claim did not arise out of the parties' relationship as partners. While "the real estate in question had formerly been the property of the partnership," "the petition alleges that it was transferred to defendant Michael Alfend pursuant to the dissolution agreement and the petition attacks the subsequent transfer by Alfend not on the grounds of its being a fraud upon the right

5. HFC does not argue that § 508.030 is inapplicable because the property at issue is located outside Missouri, and therefore the application of § 508.030 denies HFC any Missouri forum whatsoever. Given HFC's failure to argue the point, we need not decide it. In this regard, *see Mission Med. Grp.*, 879 S.W.2d 743 (reversing trial court's dismissal of action under § 508.030, where relevant property located in Kansas, without suggesting that statute inapplicable to out-of-state property); *Est. of Wooley*, 701 S.W.2d 440, 444 n. 2 (Mo.App. W.D.1985) (dictum; "a decree by a Missouri court would be inoperative upon title to Texas real estate and would be jurisdictionally defective"; citing § 508.030, and *Sisk*, 376 S.W.2d 175).

of the partners, but as fraudulent upon plaintiff's rights as a *creditor* of Alfend, presumably under the dissolution agreement." *Id.*

Thus in *Skatoff* the claim affecting title to real estate had its genesis in a different set of operative facts than the claim seeking an accounting of the partnership's affairs. The same cannot be said here: all of HFC's claims are based upon the common allegations of the petition concerning Valley View's acquisition of the property based on its agreement to grant HFC a repurchase option, and its refusal to perform that agreement. In these circumstances, HFC is not entitled to split its cause of action between Missouri and Kansas courts, seeking monetary relief here, but preserving its right to pursue declaratory or equitable relief in Kansas.

Improper splitting of claims occurs when a party sues on a claim which arises out of the same "act, contract or transaction" as the previously litigated claims. A court should also consider "whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions." ... The rule against splitting a claim for relief serves to "prevent a multiplicity of suits and appeals with respect to a single cause of action, and is designed to protect defendants against fragmented litigation, which is vexatious and costly." *Kesterson v. State Farm Fire & Cas. Co.,* 242 S.W.3d 712, 716 (Mo. banc 2008) (citations omitted). "The word 'transaction' has a broad meaning and includes all the facts and circumstances out of which an injury arose." *Bagsby v. Gehres,* 139 S.W.3d 611, 615 (Mo.App. E.D.2004). Whether a plaintiff is seeking to improper-

ly split a cause of action depends on the "ultimate facts" underlying separate claims, not on the "evidentiary details." *Kesterson,* 242 S.W.3d at 716.[6] Here, all of HFC's claims arise from the same underlying transaction (in which the May 2009 Agreement and associated deeds were executed), and they therefore cannot be pursued in separate lawsuits, despite the fact that certain of its claims seek to invalidate the agreement and deeds, while others seek damages for Valley View's alleged breach of the agreement. RESTATEMENT (2D) OF JUDGMENTS § 25, comment h, 1 (1982).

HFC cannot seek to have the court order the severance of its title-related claims, where HFC would not be permitted to litigate those claims in a separate action under the claim-splitting doctrine. In *Felling v. Giles,* 47 S.W.3d 390 (Mo. App. E.D.2001), the Eastern District held that a plaintiff could not prosecute certain claims in a second lawsuit, following the adverse resolution of related claims in an earlier suit. The Court held that the second suit improperly split the plaintiff's claim, even though the trial court in the first suit had entered an order, on plaintiff's motion, dismissing the later-asserted claims from the first action.

The plaintiffs cannot take solace from the court's order[, in the first action,] dismissing the counts now sued on without prejudice upon plaintiffs' motion. The plaintiffs sought to split their cause of action. The trial court could have, and did, order separate trials of the several counts, but could not authorize the maintenance of a second action containing claims which were required to be

---

**6.** While the claim-splitting doctrine is most frequently applied where a second suit follows the conclusion of an earlier one, the doctrine also applies to actions pending si-

multaneously. *See, e.g., Welch v. Contreras,* 174 S.W.3d 53, 55 n. 3, 57 (Mo.App. W.D. 2005); *Bagsby,* 139 S.W.3d at 615; *Hutnick v. Beil,* 84 S.W.3d 463, 466 (Mo.App. E.D.2002).

included in a prior action which had become the subject of a final judgment. *Id.* at 395. The same reasoning applies here: HFC cannot now argue that the trial court should have *ordered* the separate litigation of the title-related claims, where HFC could not itself have filed those claims in a second action.

### Conclusion

The circuit court did not err in concluding that Counts III and IV of HFC's petition sought relief which would directly affect title to real estate, and that under § 508.030 those claims could not be litigated in Jackson County, when they concerned property located in Kansas. HFC has failed to show that the court's dismissal of the entire action was erroneous, in light of the venue defects in Counts III and IV. The circuit court's judgment is affirmed.

All concur.